# BOARD OF EDUCATION OF ROGERS, ARKANSAS, ET AL. *v.* McCLUSKEY, BY HIS NEXT FRIEND, McCLUSKEY

No. 81–1577.   Decided July 2, 1982

PER CURIAM.

Respondent, a 10th-grade student in the Rogers, Ark., School District, left school on October 21, 1980, after the first period without permission, and, with four other students, consumed alcohol and became intoxicated. When he returned to school later that day to go on a band trip, he was notified that he was suspended from school. His parents were notified the next day that their son had been suspended pending a hearing before the Rogers School Board; a hearing was scheduled for October 29. At the hearing before the Board, none of the five students denied that they had been drinking, and the Board voted to expel all five for the remainder of the semester.

Respondent immediately sought injunctive relief under 42 U. S. C. § 1983 (1976 ed., Supp. IV), and the case was heard by the United States District Court for the Western District of Arkansas on December 4. The District Court decided that the School Board had violated respondent's right to substantive due process, and ordered that he be granted credit for the semester during which he was suspended and that all references to his suspension be expunged from his school records.

The District Court's action was based on its interpretation of the School Board's rules and its conclusions concerning which rules the Board invoked in suspending respondent. There is no doubt that the Board had the authority to suspend respondent under §§ 9 and 10 of its written Policies on Pupil Suspension. Section 9 provides that the Board *may* suspend or expel any student "for good cause." Section 10 defines "good cause," and provides that it includes "sale, use or possession of alcoholic beverages or illegal drugs." Thus it was clearly within the Board's discretion to suspend a student for becoming intoxicated.

The District Court decided that the Board had acted under § 11 of its rules, which provides for mandatory suspension when it applies. Section 11 provides:

"For the protection of other pupils in the school grades 9–12, the school board *shall* expel for the remainder of the semester with loss of credit for the semester's work any pupil whenever it has been established to the satisfaction of the board, or the superintendent, or the principal, or his assistant in charge, that the pupil has on school premises or at school sponsored activities (including trips) used, sold, been under the influence of, or been in possession of narcotics or other hallucinogenics, drugs, or controlled substances classified as such by Act 590 of 1971, as amended."

There was conflicting testimony concerning which section the Board had invoked. The letters sent to respondent's parents informing them of the suspension and the hearing cited both § 10 and § 11. Adams, a Board member and a lawyer, testified that he based his motion to expel McCluskey on § 10 because he had doubts about the applicability of § 11. The Chairman of the Board testified that the Board had suspended students under § 11 for alcohol offenses for the past five years.

The District Court found as a matter of fact that the Board acted under § 11 when it suspended respondent. It then went on to decide that § 11 did not apply to alcohol.* Section 11 applies to "narcotics or other hallucinogenics, drugs, or controlled substances classified as such by Act 590 of 1971, as amended." Act 590, Ark. Stat. Ann. § 82–2602(e) (Supp. 1981), specifically exempts alcohol from its coverage; therefore, alcohol is not a "controlled substance." Nor is it a "narcotic or other hallucinogenic." The District Court also concluded that alcohol is not a "drug." While technically alcohol is a drug, the District Court noted, it is not considered a drug in common parlance. For this reason, the District Court

---

*The Board has since amended its regulations so as to remove all question that suspension for the remainder of the semester is mandatory if a student is intoxicated on school premises.

concluded, the Board had acted unreasonably by suspending respondent under § 11. It held that the Board violated substantive due process by suspending him under the mandatory terms of § 11, even though the Board had discretion to suspend him under § 10.

A divided Court of Appeals for the Eighth Circuit affirmed. 662 F. 2d 1263 (1981). It reviewed the District Court's conclusion that the Board acted under § 11 rather than § 10 under the clearly-erroneous standard of Federal Rule of Civil Procedure 52(a), and held that the District Court's conclusion passed muster. It also affirmed the District Court's holding that § 11 cannot reasonably be interpreted to apply to alcohol because "the express terms of section 11 apply only to 'drugs' and expressly exempt alcohol." 662 F. 2d, at 1267. For this reason, the Court of Appeals concluded, *Wood* v. *Strickland*, 420 U. S. 308 (1975), was distinguishable. There this Court had stated that "§ 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations." *Id.*, at 326. Although this Court had plainly stated that federal courts were not authorized to construe school regulations, the Court of Appeals concluded that *Wood* v. *Strickland* was distinguishable because the school board in that case had construed its regulations reasonably while here the Board had construed its regulations unreasonably. 662 F. 2d, at 1267. Judge McMillian dissented because he concluded that *Wood* v. *Strickland* barred federal courts from construing the school regulations involved in this case differently than the Board had construed them.

*Wood* v. *Strickland* plainly requires that the Court of Appeals be reversed. There high school girls were expelled for "spiking" a punch served at a school meeting by adding two bottles of malt liquor. The malt liquor had an alcoholic content of 3.2% and the alcoholic content of the spiked punch was estimated at 0.91%. 420 U. S., at 326. The Court of Ap-

peals had set aside the girls' expulsions because they had been expelled for adding an alcoholic beverage to the punch, but a state statute defined "intoxicating liquor" as a beverage with an alcoholic content exceeding 5%, and the court thought the 5% rule of the statute should apply to the school regulation. We held that the court erred in substituting its own notions for the school board's definition of its rules:

> "[T]he Court of Appeals was ill advised to supplant the interpretation of the regulation of those officers who adopted it and are entrusted with its enforcement."
> *Id.*, at 325.

The Court continued, as noted *supra*, by stating that

> "§ 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings *or the proper construction of school regulations.*" *Id.*, at 326 (emphasis added).

The Court of Appeals and the District Court plainly erred in distinguishing *Wood* v. *Strickland* on the ground that the Board's interpretation of § 11 in this case was unreasonable while the school board's construction of "alcoholic beverage" in *Wood* v. *Strickland* was reasonable. A case may be hypothesized in which a school board's interpretation of its rules is so extreme as to be a violation of due process, but this is surely not that case. The Board's interpretation of § 11 is reasonable. Contrary to the Court of Appeals, alcohol is not expressly exempted from the coverage of § 11. Section 11 covers "controlled substances classified as such by Act 590," and Act 590 expressly exempts alcohol from its coverage. Therefore, alcohol is not a "controlled substance" under § 11. But § 11 also covers "drugs," and, as the District Court conceded, alcohol is a "drug." Moreover, § 11 mandates suspension of students under the influence of drugs while on school premises. Section 10, which gives the Board discretion to suspend students for drug use, is not limited in its application

to drug use on school premises. It is reasonable to conclude that the regulations require suspension for any drug use, including use of alcohol, on school premises, while permitting suspension for drug use off school premises.

In any case, even if the District Court's and the Court of Appeals' views of § 11 struck us as clearly preferable to the Board's—which they do not—the Board's interpretation of its regulations controls under *Wood* v. *Strickland*. The Chairman of the Board testified that the Board had interpreted § 11 as requiring the suspension of students found intoxicated on school grounds for a number of years prior to respondent's suspension, and it is undisputed that the Board had the authority to suspend students for that reason. We conclude that the District Court and the Court of Appeals plainly erred in replacing the Board's construction of § 11 with their own notions under the facts of this case. Accordingly, the petition for certiorari is granted, and the judgment of the Court of Appeals is

*Reversed.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

As JUSTICE REHNQUIST has reminded us, in "our zeal to provide 'equal justice under law,' we must never forget that this Court is not a forum for the correction of errors." *Boag* v. *MacDougall*, 454 U. S. 364, 367–368 (1982) (dissenting opinion). "To remain effective, the Supreme Court must continue to decide only those cases which present questions whose resolution will have immediate importance far beyond the particular facts and parties involved."[1] This case illustrates how ineffectively the Court is supervising its discretionary docket.

---

[1] Address of Chief Justice Vinson before the American Bar Association, September 7, 1949 (quoted in R. Stern & E. Gressman, Supreme Court Practice 258 (5th ed. 1978)).

972

The case is not of sufficient importance to warrant full briefing and argument. It is not worthy of an opinion signed by a Member of this Court. The disposition is explained by an anonymous author writing *"per curiam"*—that is to say, "for the Court." In ever-increasing numbers, appeals throughout the federal system are being decided in this anonymous fashion. It is not uncommon for courts of appeals to issue opinions that are not to be cited as authority in other cases.[2] In one recent published case—which was sufficiently important to induce this Court to grant certiorari even before a conflict in the circuits had developed—the court purported to justify such an ad hoc adjudication by asserting that it lacked "precedential character."[3] The threat to the quality of our work that is presented by the ever-increasing impersonalization and bureaucratization of the federal judicial system is far more serious than is generally recognized. Regrettably the example set by this Court in cases of this kind is not one of resistance, but rather of encouragement, to the rising administrative tide.

We are far too busy to correct every error that we perceive among the thousands of cases that litigants ask us to review. In recent years, when we have exercised our discretionary jurisdiction and issued *per curiam* rulings deciding cases summarily, we have most frequently come to the aid of a prosecutor or a warden who has been rebuffed by another court.[4] Today we exercise our majestic power to enforce a

---

[2] See Reynolds & Richman, The Non-Precedential Precedent—Limited Publication and No-Citation Rules in the United States Courts of Appeals, 78 Colum. L. Rev. 1167 (1978); Note, Unreported Decisions in the United States Courts of Appeals, 63 Cornell L. Rev. 128 (1977).

[3] *Rowley* v. *Board of Education of Hendrick Hudson Central School District*, 632 F. 2d 945, 948, n. 7 (CA2 1980), rev'd, *ante*, p. 176.

[4] In this Term, see *Duckworth* v. *Serrano*, 454 U. S. 1 (1981); *Jago* v. *Van Curen*, 454 U. S. 14 (1981); *Leeke* v. *Timmerman*, 454 U. S. 83 (1981); *California ex rel. Cooper* v. *Mitchell Brothers' Santa Ana Theater*, 454 U. S. 90 (1981); *Harris* v. *Rivera*, 454 U. S. 339 (1981); *Hutto* v. *Davis*, 454 U. S. 370 (1982); *Wainwright* v. *Torna*, 455 U. S. 586 (1982); *Sumner*

School Board's suspension of a 10th-grade student who consumed too much alcohol on October 21, 1980.

If the student had been unjustly suspended, I wonder if the Court would consider the matter of sufficient national importance to require summary reversal. I doubt it.

I respectfully dissent.

---

v. *Mata* 455 U. S. 591 (1982); *Fletcher* v. *Weir,* 455 U. S. 603 (1982); *United States* v. *Hollywood Motor Car Co., ante,* p. 263; *Michigan* v. *Thomas, ante,* p. 259. But see *Boag* v. *MacDougall,* 454 U. S. 364 (1982).

It certainly cannot be said that egregious error is presented only in cases in which prosecutors and wardens seek review. See, *e. g., McKinney* v. *Estelle,* 657 F. 2d 740 (CA5 1981), cert. denied, 456 U. S. 937 (1982); *Tejeda-Mata* v. *INS,* 626 F. 2d 721 (CA9 1980), cert. denied, 456 U. S. 994 (1982).