Dr. Abbie **JORDAN**, Plaintiff,

v.

**BOARD OF REGENTS, UNIVERSITY SYSTEM OF GEORGIA, et al,** Defendants.

Civ. A. No. 481–542.

United States District Court, S.D. Georgia, Savannah Division.

Sept. 30, 1983.

---

Joseph B. Bergen, Savannah, Ga., for plaintiff.

Alfred Evans, Jr., Georgia Asst. Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

ALAIMO, Chief Judge.

Dr. Abbie Jordan, aggrieved by termination of her employment as an assistant professor at the Savannah State College (a branch of the university system of the State of Georgia), brings this action pursuant to 42 U.S.C. § 1983 and, its jurisdictional counterparts, 28 U.S.C. §§ 1331 and 1343. She appends state law claims for breach of contract and slander, praying for injunctive and declaratory relief, compensatory and punitive damages, as well as attorney's fees and costs of the litigation. The defendants are the Board of Regents of the University System of the State of Georgia, its individual board members, the president and former acting-president of Savannah State College and its former acting head of the department in which plaintiff had been employed.

The "Nature of Action," as stated in ¶¶ 9 and 10 of her complaint, is:

9. This is a proceeding seeking Compensation for plaintiff as a result of the arbitrary and capricious manner in which the defendants treated plaintiff in connection with her professional employment as an associate professor at Savannah State College, who was deprived of her rights secured by the Constitution and laws as a tenured associate professor at Savannah State College to which she had a legitimate claim of entitlement to continued employment and in which she has a proprietary interest, when she was illegally terminated from that employment without prior notice and proper opportunity to be heard.

10. The plaintiff seeks a Declaratory Judgment setting forth her rights in the premises, an Injunction prohibiting the defendants from maintaining a policy or practice of discrimination against plaintiff with respect to its failure to rehire plaintiff for the Academic Year 1980–81 and subsequent years, and to compensate

plaintiff for Damages she sustained and is sustaining as a result thereof.

The complaint was countered with a motion for a judgment on the pleadings. Fed. R.Civ.P. 12(c). While, at a pretrial conference, the Court indicated the motion had substantial merit (*see* transcript of the pretrial hearing, attached hereto as Exhibit "A"), it later entered an Order denying the motion on the usual ground that it could not be said that there were no conceivable set of circumstances, under the pleadings, entitling plaintiff to some recovery.

Thereafter, the defendants filed a comprehensive motion for summary judgment based upon:

(1) Plaintiff's Complaint,

(2) Defendants' "Defenses and Answer,"

(3) The "Proposed Pretrial Order,"

(4) Board of Regents' Policy I-5, and

(5) The complete Record (transcript of the evidence and documents introduced into evidence) of the proceedings before the Board of Regents, along with the decision of the Board of Regents, certified to this Honorable Court along with this Motion.

After a painstaking review of the record, the Court has come to the conclusion that there is no genuine issue of material fact in this case. It would be an unconscionable burden to both parties to subject them to the costs and rigors of a trial. The defendants are clearly entitled to summary judgment.

**THE FACTS**

The following recitation of facts has been drawn from the plaintiff's complaint; the Board of Regents' applicable Policy regarding employment contracts, certified to the Court by the executive secretary of the Board of Regents and filed in the record on July 21, 1983; the certified transcript of the proceedings before the Board of Regents, its findings of fact, conclusions of law and decision thereon, properly certified to this Court.

From the foregoing, it appears that the plaintiff, Dr. Abbie Jordan, was first employed as an instructor at Savannah State College in 1965. She continued to serve as a faculty member at that institution pursuant to a series of single nine-month academic-year contracts through the academic year 1979–80, commencing in September 1979 and ending in June 1980.

As an educational institution of the University System of Georgia, Savannah State College is subject to the complete governance, management and control of the Board of Regents of the University System of Georgia, an agency of the Executive Branch of the State of Georgia. While she worked at Savannah State College, her actual employer was the Board of Regents. *See* O.C.G.A. §§ 20–3–31, 20–3–32, 20–3–51, 20–3–53, 20–3–57.

Dr. Jordan was a tenured employee of the System. However, under applicable Board of Regents' Policy, all faculty members—tenured and untenured—are required to be employed under written single-year contracts, for a nine-month academic year. The form of such contracts is specified by written Board Policy.

A consequence of a faculty member's failure to sign and return the contract offered to her within the period of time prescribed in the standard-form contract (fifteen days) is the exhaustion of any right to continued employment.

On June 25, 1980, the then-acting president of Savannah State College forwarded to plaintiff her proposed Regents' faculty employment contract for the academic year 1980–81, to commence on September 13, 1980, and end on June 12, 1981. The contract offered to Dr. Jordan was in the form specified by the Board of Regents, including the paragraph stating that Dr. Jordan could signify her acceptance of the contract for the ensuing academic year by signing and returning the contract to the acting president within fifteen days following the date the contract was offered. This fixed a deadline of July 10, 1980, for her acceptance. The sole differences between the contract offered to the plaintiff for 1980–81 and her contract for the previous year were that the new proposed contract reflected a salary increase slightly in excess of $1,000

and indicated the particular department to which she was assigned and budgeted.

Dr. Jordan did not sign and return the contract within the specified period; rather, on July 9, 1980, she returned the contract unsigned along with a letter objecting to the contract's designation of her department.

The acting president replied immediately, advising plaintiff that all academic contracts had been prepared indicating, among other things, the particular department to which a faculty member was assigned and that the contract offered to her was correct as to its designation. Acting President Hall also extended the date for Dr. Jordan's acceptance until July 18, 1980.

For the second time, on July 14, 1980, Dr. Jordan rejected the employment contract offered her. Along with her rejection, she requested reconsideration of her desire to have her departmental designation deleted.

On August 6, 1980, Acting President Hall returned the unsigned contract to Dr. Jordan for the third time, advising her in his transmittal letter: "Please be advised that you will not be placed on Savannah State College's payroll for the ensuing academic year without our having a signed contract from you."

The plaintiff did not respond to the third offer of the contract by signing it, nor did she report for duty or meet her Fall classes on September 13, 1980. In fact, she never returned to work and was terminated on November 4, 1980.

On October 13, 1980, she, for the third time, returned her contract unsigned and, in addition, returned a payroll check which had been inadvertently sent her through clerical error. In her letter of transmittal returning the check, she stated: "Acceptance of the check would be an implication of my acceptance of the contract under which the check was issued."

On September 15, 1980, the president of Savannah State College received a wire from plaintiff advising him that she had to return to the hospital on September 15 in connection with complications from recent surgery. She did not indicate how long she would be in the hospital and, more importantly, did not utilize Savannah State College's routine sick leave procedures. She had used such procedures before but, for some reason, did not do so in this instance. As previously stated, she never did report to assume her teaching responsibilities, even though her doctor said it was medically possible for her to resume work.

Following Dr. Jordan's third rejection, on October 13, 1980, of the contract offered to her, the new president of Savannah State College inquired of the central office of the Board of Regents for advice as to how to proceed. He was instructed by the executive secretary of the Board that he should notify *all* individuals who had not signed their contracts within the stipulated fifteen days that this would be interpreted as a resignation from the University System. This was communicated to Dr. Jordan by a letter dated October 16, 1980, stating to her that she would have ten days to sign the contract, with a proviso that her signature on the contract would not preclude her from presenting her complaint regarding department designation to the soon-to-be-formed grievance committee.

As of November 4, 1980, Dr. Jordan had neither signed the employment contract nor reported to assume any teaching responsibilities; and, on that date, the president advised Dr. Jordan in writing that, because she had repeatedly refused to sign and return the employment contract offered to her, her employment at Savannah State College was at an end because she had in fact abandoned her employment.

Aggrieved by this decision, Dr. Jordan asked for and was given a plenary evidentiary hearing before the Board of Regents. (A complete record of those proceedings has been certified to this Court and filed for the record.) It was the Board's ultimate conclusion that: "The refusal by the appellant to accept, sign and return the employment contract repeatedly offered to her within the time provided by the Policies of the Board, was, under the circumstanc-

es, an abandonment of her employment rights at Savannah State College and tantamount to a resignation as a faculty member at this institution." This decision of the Board was entered on April 15, 1981.

Being dissatisfied with this decision, the plaintiff, on December 22, 1981 (more than a year following President Rayburn's notice to her that her employment was at an end), filed the instant law suit.

As previously stated, Dr. Jordan's complaint is based upon an illegal termination of what she claims was "a legitimate claim of entitlement to continued employment and in which she had a proprietary interest." In addition, she claims the basic "deprivation of due process," "equal protection" and "first amendment" claims, as well as two state law claims.

The Court concludes that, having failed to return a signed contract, plaintiff had no legal entitlement to continued employment. She unquestionably *abandoned* her job. Moreover, there is absolutely no invidious discrimination against the plaintiff disclosed by the record, rising to a denial of equal protection of the law.

In addition, there is absolutely nothing in the record to show that her termination was caused by the exercise of her first amendment rights.

Her first amendment and equal protection claims (sounding in employment discrimination) are barred by the applicable 180-day statute of limitations.

Finally, plaintiff received all process due her.

## CONCLUSIONS OF LAW

■ In *Parratt v. Taylor* 451 U.S. 527, 536–537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), the Supreme Court enumerated four requirements for the existence of a valid "due process" claim. Two of them were that there must be a constitutionally protected property or liberty interest in issue and that the deprivation of the protected interest must be *without* "due process of law." Here, plaintiff's voluntary refusal to accept and sign the employment contract offered her exhausted any right

she may have had to continued employment. There was no property or liberty interest left. *See Guinn v. King*, No. C75–1043A (N.D.Ga., June 30, 1977), *aff'd* 608 F.2d 522 (5th Cir.1979) [unreported]; *Kalme v. West Virginia Board of Regents*, 539 F.2d 1346, 1348 (4th Cir.1976); *Akyeampong v. Coppin State College*, 538 F.Supp. 986, 990–991 (D.Md.1982).

Plaintiff was not denied due process of law. Her complaint sounds in breach of contract (one of her pendent state law claims) for which she had an ample remedy in a state forum. *Parratt v. Taylor, supra; Casey v. Depetrillo*, 697 F.2d 22 (1st Cir.1983).

■ In addition, she was offered and took advantage of a plenary evidentiary hearing before the Board of Regents, a quasi-judicial body. *See Board of Education of Rogers, Ark. v. McCluskey*, 458 U.S. 966, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982); *Viverette v. Lurleen B. Wallace State Junior College*, 587 F.2d 191, 193 (5th Cir.1979). The Board's findings and conclusions that she had waived her right to continued employment are amply supported by the evidence before that body. As the Supreme Court pointed out in *McCluskey*, "§ 1983 does not extend the right to relitigate in federal court evidentiary questions arising out of school disciplinary proceedings or the proper construction of school regulations." *McCluskey, supra* 458 U.S. at 970, 102 S.Ct. at 3472, 73 L.Ed.2d at 1277 (citation omitted). In sum, in view of the ample due process already accorded her by the Board of Regents, this Court is of the opinion that she is not entitled to relitigate the circumstances surrounding the ending of her employment.

■ The equal protection claim, as well as the first amendment claim, asserting forms of discrimination in employment, are barred by the applicable statute of limitations. It is obvious that the plaintiff's claim is based upon a decision made over a year prior to the filing of the complaint. Accordingly, the 180-day period of limitations of O.C.G.A. § 45–19–36(a), analogous

to employment discrimination situations, clearly bars these claims. *See Harmond v. Board of Regents, University System of Georgia,* No. CV 481–326 (S.D.Ga., March 25, 1982), *aff'd* 691 F.2d 511 (11th Cir.1982) (*per curiam* ) [unpublished decision]; *Solomon v. Hardison,* No. C82–648A (N.D.Ga., April 27, 1983). Considering the merits of the equal protection claim, there is no assertion of invidious discrimination against some discrete class to which plaintiff belongs. *See Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *United States v. Blitstein,* 626 F.2d 774, 782 (10th Cir.1980).

Similarly, the first amendment claim is meritless. The record shows that none of her speech-related claims involved "public issues," but merely her personal complaints about the internal operation of the institution. *See Connick v. Myers,* —— U.S. ——, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

Finally, even if such "speech" was a public concern, the Board of Regents' Policy requiring the signing and acceptance of a written employment contract would have resulted in a termination in any event. *See Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 285, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977).

On September 7, plaintiff's counsel filed what he entitled "Plaintiff's Further Response to Defendant's Motion for Summary Judgment," to which he attached an affidavit by Dr. Jordan. A careful examination of the affidavit and a comparison of it with plaintiff's counsel's previous briefs, however, discloses that the affidavit is nothing more than a rehash of counsel's argument subscribed by plaintiff.

In summary, this Court rejects (as it must) Dr. Jordan's request that it intrude upon and interfere with the internal affairs of the University System of the State of Georgia by reversing the decision of the Board of Regents.

Accordingly, on the federal claims asserted, summary judgment is granted to the defendants.

In the exercise of the Court's discretion, *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Court declines to exercise jurisdiction over the state law claims and they are hereby dismissed without prejudice.

The Clerk of Court is directed to enter an appropriate judgment.

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| DR. ABBIE JORDAN, Plaintiff, | * | |
| | * | |
| VERSUS | | CV481-542 |
| | * | |
| BOARD OF REGEANTS, THE UNIVERSITY SYSTEM OF GEORGIA, ET AL. | * | |
| | * | |

Transcript of the hearing in the above-captioned case taken in
Savannah, Georgia, on November 1, 1982, before the Honorable
Anthony A. Alaimo, Chief Judge.

APPERANCES:

    For the Plaintiff:        JOSEPH B. BERGEN, ESQ.
                                   125-127 Habersham Street
                                   Savannah, GA  31401

    For the Defendant:        ALFRED EVANS, JR., ESQ.
                                   132 State Judicial Building
                                   Atlanta, GA  30334

W. CRAIG DELOACH
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
P.O. BOX 1134
BRUNSWICK, GEORGIA  31521

JORDAN v. BOARD OF REGEANTS; CV481–542.

NOVEMBER 1, 1982. CONVENE AT 8:40 A.M.

THE COURT: tell me this, Mr. Bergen: Did this woman get three offers?

MR. BERGEN: Yes, sir; but they—

THE COURT: And then, to really be in a particular department?

MR. BERGEN: Well, I think the main thing is the offers were different than the offers—that distinguishes it from that gun case or the—

THE COURT: I do not think it does. I really do not. I am really puzzled about her refusal to sign the letters—the contracts.

MR. BERGEN: Well, she didn't want to refuse. She never did intend to refuse. She wanted to—obviously, kept going back and writing letters back and forth. She wanted the contract, but the contract—

THE COURT: On her terms.

MR. BERGEN: Well, that would be the—

THE COURT: Yes, but I mean, is this not basically it?

MR. BERGEN: Well, on the terms that she had before, that is the main—and I think that is the—I submit that that is—

THE COURT: Well, what was the difference? Tell me what it was. She was in languages, was she?

MR. BERGEN: She was in—it was in the department of her designation.

THE COURT: Remedial Reading or some sort of thing?

MR. BERGEN: Yes, sir.

THE COURT: Well, did they—

MR. BERGEN: She wasn't given the same designation that she had—classification is the word I was looking for—that she had at the previous—

THE COURT: You know, I really do not think you have a case.

MR. BERGEN: Well, it is a tough—it is a close question. I think that is the whole—

THE COURT: Yes. I really do not think you have a case. And really, it would be a shame to try this thing and, then, have them say up above that—I am inclined to think that the best thing I can do for you is to sustain the motion on the pleadings, which would be the most tenuous basis that you could possibly dismiss a case, and let you go ahead and take it up.

MR. BERGEN: Appeal it.

THE COURT: Yes. Because I—frankly, from what I have read, both your authority as well as his, I just do not feel that you have a case. I mean if these pleadings are right, you know?

MR. BERGEN: Yes, sir. I didn't leave much out I don't think.

THE COURT: No, you did not, but I say, I think there is a full enough exposition of the facts in the pleadings themselves. Do you not agree?

MR. BERGEN: Yes, sir. It certainly was intended to be.

THE COURT: That it frames the issue as best you could put it.

MR. BERGEN: I don't think either one of us have a dispute about the facts in this case. We have the same exhibits. We agreed on all that.

THE COURT: Well, it seemed that way, and I think that there are enough facts shown by your pleadings, which taken most favorably, would properly frame this issue. So, that if you have any basis for a recovery, they will reverse it.

MR. BERGEN: I see. I think you are right. You may be doing me—

THE COURT: Well, I think, in the long run, the cheapest way to handle this case is this way.

MR. BERGEN: All right, sir. Unless we settle it.

THE COURT: Yes. What about that?

(OFF THE RECORD DISCUSSION.)

THE COURT: The reason I feel this way is that I think that her entitlement in the case was really to a contract offer, and under that, I think her rights arising from her tenure were fully satisfied by the employment contract offered to her on three separate occasions.

MR. BERGEN: That is all she is really entitled to is—

THE COURT: I did not see any fundamental change, and after all, there has to be a certain degree of latitude in an administration with respect to the type of work they may have to do. There has to be some reasonable relationship to the qualification, but after all, they have some latitude in running the system, so that I think a repeated rejection of the contract pretty much seals the fate of her claims and, as far as I feel, the entire case. So, for that reason, I would sustain a motion for judgment on the pleadings in view of that with respect to the 1983 claims.

I would also grant it with respect to the State Law claims—the pendant claims—as a matter of discretion without prejudice. That is my best shot at it. I still think you ought to see about—

MR. EVANS: I would be happy to. If you will write me the letter, I—

MR. BERGEN: I've got it—

THE COURT: See about disposing of it, really, because, after all, the litigation is going to be expensive, and there is always a chance—you know. For this reason: you have asked for a judgment on the pleadings, and they may say, you know, "too skimpy."

MR. EVANS: Close to a motion to dismiss.

THE COURT: Yes.

MR. EVANS: I understand. Maybe I should put the documents in and convert it to a summary judgment.

THE COURT: Okay. But nevertheless, they might say that. See? So, that is one risk you run, but I am according the relief you asked.

(RECESS AT 8:58 A.M.)

CERTIFICATE

I hereby certify that the foregoing five (5) pages of typewritten material were taken down by me, transcribed under my supervision, were proofread by me, and are true and correct to the best of my ability;

I further certify that I am a disinterested party to this action and am neither kin nor counsel to any of the parties hereto;

This 29th day of August, 1983.

WALTER CRAIG DELOACH
Official Court Reporter