Gerry SMITH, Plaintiff,

v.

LITTLE ROCK SCHOOL DISTRICT, A Public Body Corporate, Ed Kelly, Superintendent, The Little Rock School Board, in their Official Capacity and Individually, Willie Hamilton, Herb Rule, Fay Southern, B.G. Williams, B.F. Mackey, Jr., Herb Yarbough, R.J. Altheimer, and Jo Evelyn Elston, Defendants.

No. LR–C–84–189.

United States District Court, E.D. Arkansas, W.D.

March 8, 1984.

James Massie, Little Rock, Ark., for plaintiff.

Chris Heller, Friday, Eldredge & Clark, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

This action is brought against the Little Rock School District, the Little Rock School Board, and various officials and administrator of the school system.

Plaintiff is a black male, 19 years old, and a former eleventh grade student of Parkview High School, a part of the Little Rock School District.

His complaint requests injunctive and declaratory relief under Title 42, U.S.C., § 1983. Plaintiff alleges that on January 30, 1984, he was suspended from school for the purported violation of Rule No. 5 of the Little Rock School District Student Conduct Code, which reads as follows: "Criminal offenses committed away from school which may affect the school climate."

In this action plaintiff seeks *inter alia* reinstatement in the Little Rock School District, expungement of records, credits for

lost time and monetary and punitive damages. Plaintiff specifically prayed that this Court hold an immediate hearing and enter a preliminary injunction prohibiting the defendants from expelling him. A hearing was held on plaintiff's motion on March 1, 1984, and testimony was received from the plaintiff, the superintendent of the Little Rock School District, the principal of Parkview High School, the president of the Little Rock School Board, and the director of the Office of Pupil Personnel.

Among other things, the plaintiff contends that Rule 5 gives him no notice as to what acts are detrimental to the school environment; that the school has no authority over his actions when he is outside the bounds of school property. He further contends that he has only been charged with a criminal offense, not found guilty, and that the school board by punishing him is preempting the role of the courts.

At the preliminary hearing the plaintiff admitted, "Yes, I shot Herbert Johnson," and that he used his own 357 Magnum pistol which he had in his pocket. Plaintiff has been charged with murder but it was stipulated that plaintiff had not been convicted of any criminal offense nor admitted that he was guilty of any offense.

The evidence reflected that the Board of Directors of the Little Rock School District ["Board"] made the following findings of fact at a hearing held on February 21, 1984: Plaintiff Gerry Smith fired a gun which caused the death of another person; and an unsafe situation could develop at Parkview High School if plaintiff Smith is allowed to return there. Based on those findings and the evidence presented at the hearing, the Board voted to expel plaintiff Smith from school for the remainder of the semester.

The February 21st hearing before the Board was the culmination of the process afforded plaintiff Smith to challenge the recommendation of Parkview principal, Mr. R.J. Altheimer,[1] that Smith be expelled.

The process began when Mr. Altheimer contacted plaintiff's mother to schedule a meeting and to give plaintiff and his mother an opportunity to respond to the proposed expulsion. Plaintiff's mother agreed with Mr. Altheimer that plaintiff should not be enrolled in Parkview High School and declined the opportunity for a meeting. Mr. Altheimer then mailed to plaintiff's mother a notice that he was recommending expulsion and the reasons supporting the recommendation. Plaintiff appealed Mr. Altheimer's recommendation to the Office of Pupil Personnel. Following a hearing conducted by defendant Jo Evelyn Elston, at which plaintiff was represented by an attorney, the recommendation of the principal was sustained. The plaintiff appealed that determination to the Board, and the Board accorded the plaintiff a full hearing at which plaintiff was represented by counsel. The Board then voted to expel plaintiff Smith for the remainder of the semester.

When Mr. Altheimer was questioned as to the bases for his recommendation of expulsion, he testified as follows:

As I stated earlier, Gerry has a sister at Parkview, the deceased has a brother and sister. I made the judgment for the welfare of the entire student body for any type of trouble that may develop, I am charged with the responsibility of making those decisions there. To maintain peace and tranquility

I do know my student body very well. I have to be on the alert and look out for anything that happens in the community at any time that may be brought to the school.

\* \* \* · \* \* \*

It was my feelings and my beliefs and my judgment that it would not be a wholesome environment for Gerry to be there with the brother and sister of the deceased. I did this, I took this step for Gerry's welfare and for the brother and

1. Mr. Altheimer has 33 years of experience as an educator, 18 years as a classroom teacher, and 15 years as an administrator.

sister of the deceased. And I might mention, Attorney Massie, in talking to Gerry's mother, she agreed with me on the phone that she felt that it was in the best interest that Gerry not return to Parkview.

He also testified that Gerry had been one of the students under his supervision for a number of years and that he had been disciplined for his unruly conduct on several occasions.

All high school students in the Little Rock School District are provided copies of the *Student Rights and Responsibilities Handbook.* The handbook is taught to the students in English classes for the first two weeks of each school year. The handbook contains a Student Conduct Code. The Code describes the types of behavior which will result in school imposed sanctions. The Student Conduct Code applies to criminal offenses committed away from school but which may affect the school climate. That provision is not intended to limit the authority of the Board to act only in situations when a student has been *convicted* of a criminal offense. The Court finds reasonable the argument of school authorities that *if they* were forced to wait for a courtroom adjudication before taking action, the rule would be meaningless. The Student Conduct Code also warns students that "conduct not specifically mentioned might also call for disciplinary action if it is disruptive or harms others."

Other factors considered by the Board are plaintiff's disciplinary record, which was before the Board at the February 21st hearing, and showed that he had been suspended from junior high school or high school six times. These offenses included fighting, using abusive and threatening language to the principal and vice principal, and disruptive behavior in class. The fact that the person who was shot and killed by plaintiff has a brother and a sister who attend Parkview might also tend to cause a very explosive situation at the school, with a potential of harm to the plaintiff himself as well as other students at Parkview.

The president of the Board, Ms. Fay Southern, testified the above enumerated factors were carefully considered by the Board and that due process was accorded the plaintiff at the Board meeting on February 21, 1984. The transcript of the meeting was received in evidence and the Court finds it supports Ms. Southern's testimony. The testimony of Dr. Ed Kelly, superintendent of the Little Rock School District, and Ms. Jo Evelyn Elston further confirmed the careful attention given to this matter by the school officials before voting to uphold the expulsion. The Court finds this testimony to be logical and convincing.

These seem to be the main facts considered by the Board. As to the law, in *O'Rourke v. Walker* (1925), 102 Conn. 130, 128 A. 25, 41 A.L.R. 1308, the court emphasized that the true test of a teacher's right to punish a pupil for conduct off the school campus is not the time or place of the offense, but its effect upon the morale and efficiency of the school, and whether it in fact is detrimental to the good order and to the welfare of the pupils.

In *R.R. v. Board of Education* (1970), 109 N.J.Super. 337, 263 A.2d 180, a high school sophomore was suspended primarily for involvement in a stabbing incident after school hours outside the school grounds. The court held that the school authorities lawfully could suspend him for events happening outside of school hours. In reaching its decision the court stated: "The school officials can suspend or expel a student for conduct outside of school hours when it is reasonably necessary for the punished student's physical or emotional safety or for the safety and well-being of other students, teachers, or public school property."

The court, in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), defined the role of federal courts in § 1983 cases:

It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive

and procedural rights while at school. But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

See, also, *Board of Education of Rogers, Ark. v. McCluskey,* 458 U.S. 966, 102 S.Ct. 3469, 73 L.Ed.2d 1273 [1982].

■ If there is evidence to support the decision of a school board, it is improvident for the court to render a contrary judgment. *Wood v. Strickland, supra.* The burden is on the plaintiff to prove the insufficiency of the evidence in support of the board's decision. *Clements v. Board of Trustees of Sheridan County School District,* 585 P.2d 197, 201 (Wyo.1978), and cases cited therein.

■ As to whether or not a preliminary injunction should be issued, the Court must consider the four factors enunciated in *Dataphase Systems, Inc., v. C L Systems, Inc.,* 640 F.2d 109, 114 n. 9 (8th Cir.1981).

As dictated by the mandates of the Eighth Circuit, first, the Court must consider whether the plaintiff will be irreparably harmed absent an injunction. The burden of showing irreparable harm is on the plaintiff. The Court finds that the plaintiff will not be irreparably harmed in this case if an injunction is not issued. The record indicates he has amassed enough high school credits to graduate at the end of the 1984–85 school year, if he is readmitted and attends summer school and the regular term.

Next, the Court must balance the harm plaintiff may suffer as a result of his expulsion against the serious risk to other students which would be presented by plaintiff's presence at the school. The Court finds that the risk of harm to other students and the potential for disruption of educational processes outweigh whatever harm plaintiff Smith may suffer as a result of his expulsion.

As to the probability of success on the merits, the evidence in support of defendants' position appears to outweigh that of the plaintiff's. The school board's action is based not only on the Student Code of Conduct but also upon Arkansas Statutes which establish the responsibilities of the school administrators in carrying out their duties.

*Ark.Stat.Ann. 80–1656*—Rules and Regulations for Orderly Operation of Schools.

Nothing in this Act [§§ 80–1644—80–1656] shall be construed to limit a local school district's power to adopt reasonable rules, regulations and policies, not inconsistent with the purposes of this Act, to insure continued orderly operation of schools, including adult education and area vocational-technical high schools, and such powers are deemed to include the right of expulsion for student participation in any activity which tends, in the opinion of the Board, to disrupt, obstruct or interfere with orderly education processes. [Acts 1969, No. 63, § 13, p. 181.]

*Ark.Stats.Ann. 80–1516.*—Suspension of pupils—Causes—Right to appeal.

The directors of any school district may suspend any person from school for immorality, refractory conduct, insubordination, infectious disease, habitual uncleanliness, or other conduct that would tend to impair the discipline of the school, or harm the other pupils, but such suspension shall not extend beyond the current term. The board of directors may authorize the teacher to suspend any pupils, subject to appeal to the board. All school board meetings entertaining such appeals shall be conducted in executive session if requested by the parent or guardian of the student, provided that after hearing all testimony and debate the school board shall conclude the executive session and recon-

vene in public session to vote on such appeal.

In this case the suspension was for the current term.

The last factor to be considered is the public interest in the case. The Court finds that public interest in maintaining safe and productive schools is of paramount importance. The public interest would not be served if the Board were enjoined from removing the plaintiff from the classroom for the balance of this semester, under the circumstances presented in this case.

Accordingly, the Court finds that the motion for relief filed by the plaintiff must be denied. This does not mean that the Court regards lightly the plaintiff's constitutional right to secure an education in our school system—this is a very important right which should be guarded carefully.

However, the Court finds the plaintiff has failed to carry the burden of proving a preliminary injunction should be issued. Nevertheless, the Court is directing the school officials to reexamine this case at the end of a 30-day period and to submit a further report to the Court. The Court is also directing the officials to hold an immediate hearing if there is any change in circumstances which would warrant a review of the expulsion order.

An appropriate order will be entered in accordance with this memorandum opinion.