JERRY E. SMITH, Circuit Judge,
joined by JOLLY, JONES, CLEMENT, and OWEN, Circuit Judges, dissenting
from the denial of rehearing en banc:
In disposing of habeas corpus petitions, this court is not permitted to substitute its judgment for that of the state courts.[1] *712 But that is what this panel majority has done.[2] Although it pretends to apply the strict standard of Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), its gross misapplication of that standard evades the Supreme Court’s recent habeas instructions and circumvents the comity and federalism that Brecht was intended to safeguard. See id. at 635-38, 113 S.Ct. 1710. This is grave error that infects this circuit’s habeas jurisprudence, so I respectfully dissent from the denial of rehearing en banc.
I.
Gongora “confessed in writing that he intended to rob the victim ... [and] that he left the van [in which he was riding with five others] to rob the victim.” Gongora, 710 F.3d at 289-90 (Owen, J., dissenting). Irrespective of whether Gongora was the shooter, those facts establish his guilt under Texas’s law of parties. See id. at 290-91 (Owen, J., dissenting). On direct appeal, Gongora claimed the prosecutor impermissibly commented on his failure to testify. The Texas Court of Criminal Appeals (“TCCA”) concluded to the contrary:
When viewed in context, the complained-of comments appear to be the prosecutor’s attempt to comment on [Gongora’s] failure to produce witnesses other than [himself], which is a permissible area of comment.... Nonetheless, the prosecutor’s actual comments tended to be inartful and often confusing, leading the trial judge to sustain [Gongora’s] objections to the remarks and to instruct *713 the jury to disregard them. However, the court did not abuse its discretion in thereafter overruling [Gongora’s] various motions for mistrial on this issue. On this record, the prosecutor’s comments were not so blatant that they rendered the instructions to disregard ineffective. Thus, the judge reasonably concluded that the instructions to disregard effectively removed any prejudice caused by the prosecutor’s comments.[3]
On collateral review, the federal district court determined that, although “the prosecutor’s remarks concerning Gongora’s failure to testify amount to constitutional error,” the so-called Griffin error[4] was harmless absent “any evidence in the record that his remarks ‘had substantial and injurious effect or influence in determining the jury’s verdict’ as required for the granting of federal habeas relief.” Gongora v. Quarterman, 498 F.Supp.2d 919, 927 (N.D.Tex.2007) (citation omitted) (emphasis added). “Gongora only argues in conclusory fashion that the jury struggled in reaching its verdict, because the state’s case against him was weak.... Even if this were true, there is no evidence, substantial or otherwise, of a nexus between the prosecutor’s improper remarks during argument and the jury’s decisions.” Id. (citation omitted) (emphasis added).
Some 5]é years after receiving Gongora’s appeal, and 3Jé years after oral argument, a sharply-divided panel of this court disagreed with both the TCCA and the district court. After determining that the Fifth Amendment violation was not harmless, the majority granted the habeas petition and ordered that he “be released from custody unless within six months of the mandate of this court he is again brought to trial or the case is otherwise terminated by plea or other disposition under state law.” Gongora v. Thaler, 710 F.3d at 283 (per curiam).
II.
In Fry v. Pliler, 551 U.S. 112, 120, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007), the Court clarified that Brecht “provides the appropriate standard of review when constitutional error in a state-court trial is first recognized by a federal court.” Under that standard — applied, to different effect, by both the panel majority and Judge Owen’s dissent — an error is harmless unless it “had substantial and injurious effect or influence in determining the jury’s verdict.” Brecht, 507 U.S. at 637, 113 S.Ct. 1710 (citation and internal quotation marks omitted). Courts applying Brecht to determine harmlessness must bear in mind why it provides “the appropriate standard”: Fry teaches that the stricter Brecht standard “subsumes” the “more liberal” test articulated by AEDPA, under which “a federal court may not award habeas ... unless [a state court’s] harmlessness determination itself was unreasonable.” Fry, 551 U.S. at 119-20, 127 S.Ct. 2321 (citation omitted).
In Fry, the Court reasoned that Brecht had survived the subsequent enactment of AEDPA “because the purpose of AEDPA is to ‘limit[ ] rather than expand [ ] habeas relief,’ and Brecht is the more stringent standard.” Burbank v. Cain, 535 F.3d 350, 357 (5th Cir.2008) (quoting Fry, 551 U.S. at 119, 127 S.Ct. 2321). “That is to say, where an error is harmful under Brecht, any state court decision declaring it harmless must have unreasonably applied [clearly established federal law]. As a result, any error satisfying Brecht will also satisfy AEDPA’s deference require- *714 merits.” Bauberger v. Haynes, 632 F.3d 100, 104 (4th Cir.2011) (Wilkinson, J.).
III.
Because Gongora’s Fifth Amendment claim fails under AEDPA, it necessarily cannot surmount the even stricter Brecht standard.[5] “A state court’s determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court’s decision.” Richter, 131 S.Ct. at 786 (internal quotation marks omitted).
As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court’s ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.
Id. at 786-87 (emphasis added) (citation and internal quotation marks omitted).
Here the AEDPA inquiry is easy, in part because fairminded jurists have disagreed. In thoughtful and detailed opinions, two federal judges (the district court and Judge Owen) have concluded the error was harmless; two federal judges (comprising the panel majority) have disagreed. No amount of hyperbole (nor a resort to the less familiar Brecht standard) can transform a close call by the state court into an “extreme malfunction[ ],” id. at 786, especially here, where the TCCA reasonably declined to find reversible error based on garbled comments, about Gongora’s failure to testify, that the jury was repeatedly instructed to disregard. In concluding otherwise, the panel majority maintains the incoherent position that, although fairminded jurists could disagree regarding harmlessness, Gongora is somehow entitled to relief under a standard that is even stricter than that required by AEDPA.
IV.
Measuring Gongora’s claim against AEDPA illustrates just how blatantly the majority misapplied Brecht: Because the error was not harmful under AEDPA, it cannot be harmful under the definitionally “more stringent” Brecht standard. Burbank, 535 F.3d at 357; see also Bauberger, 632 F.3d at 104. Moreover, although Buy, 551 U.S. at 120, 127 S.Ct. 2321, determined that Brecht provides an “appropriate standard of review,” Fry does not bar a court from considering AEDPA. “Per that case, a habeas court remains free to, before turning to Brecht, inquire whether the state court’s [harmlessness] analysis was reasonable. If it was reasonable, the case is over.”[6]
In analyzing the interplay of AEDPA and Brecht, it is important to bear in mind the asymmetry inherent in Fry, in which the court of appeals had denied habeas relief under Brecht, and the petitioner alleged that it was error for the court not to *715 have also evaluated his claim under AED-PA. The Supreme Court determined that Fry’s claim “makes no sense,” because its rejection under Brecht necessarily implied rejection under “the more liberal AED-PA[ ] standard])]” Id.
In sum, Fry boldly stands for the proposition that a habeas court is not required “formally] [to] appl[y]” both AEDPA and Brecht, because “the latter obviously subsumes the former.” Id. Nothing in that case precludes a court from applying AEDPA to deny habeas relief or as part of a two-step analysis.[7] Even a brief consideration of AEDPA, arguendo or otherwise, casts the inadequacy of Gongora’s Fifth Amendment claim into sharp relief.
V.
It follows that Gongora’s claim fails under Brecht, a result that is reinforced by considering whether the prosecutor’s comments “had substantial and injurious effect or influence in determining the jury’s verdict.” Brecht, 507 U.S. at 637, 113 S.Ct. 1710 (citation and internal quotation marks omitted). Because Judge Owen has persuasively analyzed Gongora’s claim under Brecht, see Gongora, 710 F.3d at 289-90 (Owen, J., dissenting), I offer only brief additional comments, drawn from a similar case in which the Supreme Court recently granted certiorari:
The majority compounds its error by engaging in a form of possible-harm review that verges on a presumption of prejudice. This leniency appears both in its emphasis on dicta opining about the likelihood that juries draw adverse inferences, and in its ultimate finding of a “very real risk” of prejudice. Alas, the correct harmless-error standard does not permit such speculation, and neither does the undisputed evidence ....[8]
Under the “possible-harm review” conducted by the Sixth Circuit in Woodall and the instant panel majority — and exemplified by Judge Higginbotham’s determined portrayal of key facts in the light most favorable to Gongora — “no error will ever be harmless because one can never know what led a jury to its decision and it is always possible that a jury based its decision on the alleged error in question. But that is not the standard under Brecht....”[9] Not only did the evidence establish Gongora’s guilt, but “[t]he trial judge, in addition to issuing curative instructions during the prosecutor’s closing argument, admonished the jurors several times that they could not and must not consider Gongora’s choice not to testify as evidence of guilt.” Gongora, 710 F.3d at 289 (Owen, J., dissenting).
Judge Higginbotham’s latest response dismisses the instructions to disregard as “anemic [and] routinized” without explaining why they — from his reading of a long-cold record — were ineffective. He further contends that finding the Griffin error harmless would “drain the right to silence of all meaning” (emphasis added). That hyperbolic assessment is difficult to square with Judge Higginbotham’s observation that commenting on a defendant’s silence was “long tolerated” because the Fifth Amendment was interpreted, in accordance with its plain language, “only to forbid a defendant’s coerced testimony.” [10]
*716 Judge Higginbotham’s response also imbues the prosecutor’s confused comments with almost talismanic significance: So great was their purported effect on the jury that, to Judge Higginbotham, they “infected every aspect of Gongora’s trial.” By far the better inference is that, after carefully weighing the conflicting evidence — and notwithstanding the Griffin error, which had no discernible impact on the strength of the prosecution’s case — the jury, having heeded the trial court’s instructions, concluded that Gongora was one of the two men who approached the victim before he was shot. Viewed in light of the deference owed to the fact-finder and to the state courts, the record compels the conclusion that “Gongora has not shown that the prosecutor’s violations of the Fifth Amendment substantially influenced the jury’s verdict that he was guilty of capital murder.” Gongora, 710 F.3d at 290 (Owen, J., dissenting).
VI.
In response to any suggestion that the panel majority’s error in applying Brecht is not grounds for en banc review, I note that Judge Higginbotham has elsewhere opined that “[tjhis is a court of error,” and its refusal to consider matters en banc “leaves litigants at the mercy of panel roulette — the ‘law’ being the unchartered and legally indefensible view of two judges.”[11] The Supreme Court itself, moreover, routinely engages in error-correction in the habeas arena.[12] Because the Court reserves summary reversal for “matter[s] of sufficient national importance,” [13] it follows that any case evading AEDPA’s relitigation bar — to say nothing of Brecht’s even more stringent standard — “involves a question of exceptional importance.” [14]
By declaring the error harmful under Brecht, the majority implicitly brands the determination of the TCCA as worse than unreasonable and the thorough analysis of two federal judges as beyond fairminded disagreement. Adding injury to insult, the panel majority not only has vacated Gongora’s conviction but has done so after several years of deliberation. The prospect of retrial has dimmed with the passage of time and the death of the prosecution’s key witness. There is a real possibility that Gongora will go free, despite having confessed. The panel majority “undermines the State[’]s[ ] interest in finality and infringes upon [its] sovereignty over criminal matters.” Brecht, 507 U.S. at 637, 113 S.Ct. 1710.
*717 In light of the panel majority’s stubborn refusal to reconsider, the en banc court should grant rehearing, deny the Fifth Amendment claim under Brecht and AED-PA, and return the case to the panel for expedited consideration of Gongora’s Eighth Amendment claim, which the majority did not reach. See Gongora, 710 F.3d at 273. Instead, the en banc court, with six judges disagreeing,[15] has declined to disturb a flagrant grant of relief that contravenes the principles of habeas review unambiguously articulated by the Supreme Court. I respectfully dissent from the denial of rehearing en banc.

. "Habeas corpus serves as ‘a guard against extreme malfunctions in the state criminal *712 justice system, not a substitute for ordinary error correction through appeal.’ ” Dorsey v. Stephens, 720 F.3d 309, 314-15 (5th Cir.2013) (quoting Harrington v. Richter,-U.S.-, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)).

. In defense of his panel majority opinion, Judge Higginbotham takes the unusual step of filing a spirited statement "respecting the denial of rehearing en banc.” Responding to this dissent, he not only presents his judgment as a substitute for that of the state courts, but he additionally offers his proposed verdict for that of the state-court jury. Ignoring the double layers of deference with which we review state-court habeas rulings, Judge Higginbotham also announces the following per se rule: "When a prosecutor with a close case repeatedly asks the jury to do what it must not — infer the accused’s guilt from his insistence that the stare prove its case without his testimony — the conviction cannot stand.” Such an inflexible standard of review would contravene decades of habeas jurisprudence, not to mention caselaw on harmless error.
Although purporting to "resolve no facts,” Judge Higginbotham credits some statements, disregards others, and generally approaches the case as would a fact-finder in the first instance — all before addressing the prosecutor’s comments on Gongora's failure to testify. (See, for example, Judge Higginbotham’s conclusion that Gongora’s use of the future tense — "all of us were going to get out then there were gunshots” — definitively indicates that he had not left the van when the shots were fired, then speculating that a simultaneous statement — "all of us jumped back in the van”- — does not bear its plain meaning, i.e., that Gongora had left the van.) Once he reaches the prosecutor’s scattershot comments, Judge Higginbotham unpersuasively characterizes them an "unrelenting[ ] poundpngj."
Almost entirely missing from Judge Higginbotham's thoughtful analysis of the record is precisely what Gongora must show: some meaningful nexus between the error and the verdict. Judge Higginbotham contends that the prosecutor's comments must have swayed the jury because, before they were made, the state’s case was lacking. But Judge Higginbotham offers no explanation— beyond his ipse dixit — for how the prosecutor’s borderline-incoherent statements— which the jury was swiftly and repeatedly instructed to disregard — "closed the evidentiary gap.” See Gongora v. Thaler, 710 F.3d 267, 285-87 (5th Cir.2013) (Owen, J., dissenting) (quoting the prosecutor).
Judge Higginbotham maintains that "reasonable doubts remained” before the prosecutor impermissibly commented on Gongora’s silence. If that is so, however, it is highly unlikely that the prosecutor’s error did anything to dispel them.

.Gongora v. State, 2006 WL 234987, at *10 (Tex.Crim.App. Feb. 1, 2006) (citation omitted), cert. denied, 549 U.S. 860, 127 S.Ct. 142, 166 L.Ed.2d 104 (2006).

.See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

. Although the TCCA did not specifically address the prosecutor’s impermissible comments on collateral review, see Ex parte Gongora, 2006 WL 3308713, at *1 (Tex.Crim.App. Nov. 15, 2006) (per curiam), AEDPA’s relitigation bar nonetheless applies. See Johnson v. Williams, - U.S. -, 133 S.Ct. 1088, 1096, 185 L.Ed.2d 105 (2013) (“When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits.... ”).

. Ruelas v. Wolfenbarger, 580 F.3d 403, 413 (6th Cir.2009). Another circuit has concluded that, where Brecht applies, AEDPA’s " 'unreasonable application of [clearly established federal law]' standard does not survive Fry." Wood v. Ercole, 644 F.3d 83, 94 (2d Cir.2011). That view contradicts the plain language of Fry, 551 U.S. at 119, 127 S.Ct. 2321, which expressly reaffirmed the AEDPA standard as articulated by Mitchell v. Esparza, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003).

. See Ruelas, 580 F.3d at 413; see also Johnson v. Acevedo, 572 F.3d 398, 404 (7th Cir.2009) (asserting that a habeas court must apply AEDPA before applying Brecht).

. Woodall v. Simpson, 685 F.3d 574, 586 (6th Cir.2012) (Cook, J., dissenting), cert. granted sub nom. White v. Woodall,-U.S.-, 133 S.Ct. 2886,-L.Ed.2d-(2013) (No. 12-794).

. Brief for Petitioner, 2012 WL 6762488, at *22, Woodall, 133 S.Ct. 2886.

. See also Salinas v. Texas, - U.S. -, 133 S.Ct. 2174, 2177, 186 L.Ed.2d 376 (2013) *716 (Thomas, J., concurring) (internal quotation marks omitted) (“Griffin lacks foundation in the Constitution’s text, history, or logic.”).

. Huss v. Gayden, 585 F.3d 823, 832 (5th Cir.2009) (Higginbotham, J., dissenting from denial of rehearing en banc).

. See, e.g., Nevada v. Jackson, -U.S.-, 133 S.Ct. 1990, 186 L.Ed.2d 62 (2013) (per curiam): Marshall v. Rodgers, -U.S. -, 133 S.Ct. 1446, 185 L.Ed.2d 540 (2013) (per curiam); Metrish v. Lancaster, — U.S.-, 133 S.Ct. 1781, 185 L.Ed.2d 988 (2013); Parker v. Matthews,-U.S.-, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012) (per curiam); Wetzel v. Lambert, - U.S. -, 132 S.Ct. 1195, 182 L.Ed.2d 35 (2012) (per curiam); Hardy v. Cross, - U.S. -, 132 S.Ct. 490, 181 L.Ed.2d 468 (2011) (per curiam); Bobby v. Dixon, - U.S. -, 132 S.Ct. 26, 181 L.Ed.2d 328 (2011) (per curiam); Cavazos v. Smith,-U.S.-, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011) (per curiam).

. Bd. of Educ. v. McCluskey, 458 U.S. 966, 973, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982) (Stevens, J., dissenting).

. Fed. R.App. P. 35(a)(2). Summary reversal "usually reflects the feeling of a majority of the Court that the lower court result is so clearly erroneous, particularly if there is a controlling Supreme Court precedent to the contrary, that full briefing and argument would be a waste of time.” Eugene Gressman et al. Supreme Court Practice ch 5.12(a), at 344 (9th ed.2007).

. Five of those six judges join in this dissent.