Wilbert **COOLEY**, by his next friend, Wilmer Cooley, et al., Plaintiffs,

v.

**BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY** et al., Defendants.

Civ. A. No. 7100–72–H.

United States District Court, S. D. Alabama, S. D.

April 11, 1972.

J. U. Blacksher and A. J. Cooper, Jr., Crawford and Cooper, Mobile, Ala., and Jack Greenberg and Charles Stephen Ralston, New York City, for plaintiffs.

Abram L. Phillips, Jr., Mobile, Ala., for defendants.

## ORDER

HAND, District Judge.

This action was filed on April 4, 1972 alleging jurisdiction pursuant to Title 28, U.S.C., Sections 1343, 2201 and 2202. It is alleged that the action is "authorized by Title 42 U.S.C. Section 1983 seeking a temporary restraining order and a preliminary and permanent injunction to restrain the defendants" and others from depriving the plaintiffs, under color of law, etc., the immunities secured to them by the Constitution of the United States. The cause of action purports to be a class action brought by the plaintiffs on behalf of themselves and others similarly situated whose rights have been violated or are in jeopardy because of the enforcement and arbitrary and capricious application of policies and practices adopted by the defendants relative to discipline in the Mobile County Public School system. It is averred that the class represented by the plaintiffs consists of all students who have been suspended and/or expelled from the Mobile County Public School system by persons acting under the authority of the Board of School Commissioners during the year 1971–72 and all students in the Mobile County Public School system who are in jeopardy of being suspended or otherwise disciplined pursuant to the policies and practices of said defendants. It is further averred that the plaintiffs represent a sub-class consisting of all black students who have been suspended or expelled from C. F. Vigor High School during the year 1971–72 as a result of discriminatory administration of discipline policies at Vigor.

The discipline policy made the basis of the underlying complaint was adopted, as alleged in the complaint, on August 18, 1971, and a copy of said policy was attached as an exhibit to the complaint.

In addition to the complaint filed also on April 4, plaintiffs further moved by separate motion for temporary restraining order and preliminary injunction on the part of Wilbert Cooley and Kelvin Hudson seeking, among other things, immediate reinstatement in their respective schools, not only for themselves but for all members of their class, and requiring that the school institute remedial programs so as to insure the plaintiffs, and their class, the ability to receive appropriate credit for all terms of the regular 1971–72 school year, and to enjoin further disciplinary suspensions of students from Mobile County Public Schools without first providing a full disciplinary hearing meeting constitutional standards as required by law. In addition, it is prayed that the Court require that the School Board furnish to the Court a report in writing of all future disciplinary suspensions ordered

*pendente lite* and the reasons for such suspensions.

The matter was set by the Court for hearing and did come on for hearing on Friday, April 7, 1972 on the Motion for Temporary Restraining Order and Preliminary Injunction. In support of the Motion plaintiffs offered affidavits of plaintiff Kelvin Hudson as well as the verified complaint filed in this cause. Plaintiffs objected to any consideration by the Court of affidavits filed on behalf of the defendants as to the facts surrounding the suspension of the named plaintiffs and to any consideration of whether or not such suspension, pursuant to the disciplinary policy and procedure of the School Board, reasonably met the requirements of due process. Having alleged that these named plaintiffs would suffer irreparable harm, plaintiffs further objected to any testimony going to show that the allegations of irreparable harm were contravened by the actual facts in the matter.

■ No testimony was offered nor any affidavit presented which would assist the Court in delineating, (1) the class allegedly represented by these plaintiffs, (2) the grounds for their alleged suspensions, (3) whether the grounds were the same or similar to those of the plaintiffs, (4) or the procedures followed in these suspensions or threatened suspensions of other members of the alleged class. Neither was any assistance given the Court which would assist it in reaching any conclusion that such class did, in fact, exist or that these plaintiffs would be in a position to represent that class, or that the class had suffered any action that would result in irreparable harm to them. For these reasons the Court does not find at this juncture that it can consider on the Motion for Temporary Restraining Order and Preliminary Injunction any issue relating to the averments of class relief. Thus reserving this issue for later determination, the Court, therefore, will address itself to the question of whether or not the named plaintiffs were entitled to the relief sought.

■ C. F. Vigor High School is a high school located in Prichard, Alabama. To the Court's personal knowledge, and based on the averments contained in the complaint and affidavits, this high school was subject to racial disorder on at least two occasions in January and February of 1972. This Court cannot ignore the fact that C. F. Vigor High School is located in an area in Mobile County where the effects of racial integration of the schools has not been without its problems and where emotion has, from time to time, reached fevered pitch. On at least two occasions as averred, the Court cannot ignore the fact that the school in question has been forced to close, and that 1667 students enrolled in that school (census figures according to report of the Mobile County Public School system to this Court pursuant to the Decree in *Birdie Mae Davis*, of February 25, 1972,) were interrupted in their pursuit of an education. Of this number of students 956 were black and 711 were white. The Court is not aware of the size nor the consist of the disrupting forces that resulted in the closing of this school on these two occasions nor the length of time that the educational process for the total enrollment of students was interrupted by reason thereof, for this information has not yet been made available to the Court. This Court cannot ignore, however, the fact that since these occurrences the handling by the School Board of the problems at Vigor has resulted in a degree of stability that has precluded the further occurrence of such disruptions, thus enabling the 1667 students to pursue their academic work.

This Court takes judicial knowledge of the fact that pursuant to the results of the Decree in *Birdie Mae Davis*, efforts have been made by the present superintendent of the Mobile County Public Schools, Dr. Harold Collins, and his staff, to stabilize the academic community of the Mobile County Public

School system and to reduce frictions existing between the races, and, even as conceded by counsel for the plaintiffs, Mr. A. J. Cooper, considerable progress has been made in this respect. Indeed, Bi-Racial Committees established are functioning well, counselors are serving the School Board to great advantage, and presently, to the Court's knowledge, there is a concerted advertising campaign on all branches of the media, including radio, television and newspaper, encouraging the establishment of a degree of sanity in approach to the schools of Mobile County, and encouraging the groups who have created the problems, both white and black, to leave the schools alone so that the children might pursue their education. The Court is most interested in this and most gratified at the co-operation afforded and the results being obtained.

Discipline is an essential element to the orderly processes of any school operation. Pursuant to this end discipline policies and procedures for the Mobile County School Board were established last summer, and as stated in the affidavit of Dr. Collins, copies of this procedure were distributed throughout the population of the schools at the commencement of the 1971–72 term. This policy, insofar as it refers to suspensions for those guilty of deviate behavior provides a four step procedure, which procedure it appears was followed in the instant case. This procedure is that where the conduct of a student is such that problems arise from such conduct and it is thought that action need be taken, the conference is called with the parents or guardians of the students and the student himself to give all an opportunity to discuss these problems to determine if the behavior is such that it can be rectified by mutual agreement. If this does not produce desired results and the problem continues, the principal may suspend a student whose behavior threatens the security, safety or well-being of the other students or faculty or other school personnel on the

school campus. When this occurs, the parents and the students are notified in writing of the reasons why the suspension has been invoked and a conference with the principal is called for, for the purpose of discussing the action taken. After such conference is held, if the student and/or parent is not satisfied with the result, they are given an opportunity to appeal to the discipline committee known as the "Superintendent's Discipline Committee", which is composed of the assistant superintendent in charge of administration, the assistant superintendent in charge of pupil personnel and the assistant superintendent in charge of special services. At this conference the parents, the students, the teachers and as stated in the arguments, anyone else who can throw light on the matter is permitted to attend and express themselves as to the problems involved in bringing about the suspension. If this committee does not handle the matter to the satisfaction of the student or the parent, an appeal can be taken direct to the Board of School Commissioners and at that time, if counsel is desired by the party suspended, counsel may be present to present the matter to the School Board, along with such other persons as the student, parent or counsel desires to have present.

The following of these procedures may be waived by parent or student if they so choose.

Counsel for the plaintiffs argues to the Court that it is not incumbent upon the Court to pass upon the validity of this procedure insofar as this hearing is concerned and particularly as it applies to due process, but does state that this is the procedure that was afforded to the complainants; however, it is argued, this process was delayed in time and the plaintiffs were never advised that they had a right to present any of their side of the case. This is contravened, and the explanation for delay was that there were some 40 in number that had to be scheduled at that time for such

a procedure. In any event, the Court finds that such procedure was not only available but followed in the instant case.

Counsel for the plaintiffs next argued that unless there was a showing that there was a clear and present danger to the health, safety and academic well-being of the students at Vigor resulting from the re-admission of the plaintiffs in this case that they should be re-admitted and given special assistance by the school in order to afford them the opportunity to complete their academic year. Counsel then argued that the affidavits submitted by the School Board officials, concerning the finding of a clear and present danger and a reason why the re-admission of the students to the school would constitute a threat to the academic processes and safety and health of the other students, should not be admitted to contravene the affidavit filed by them as they constituted merely hearsay, though they represent the investigation by the authorities charged with handling the matter.

Based on all affidavits filed, and the arguments of counsel and the pleadings in this cause, this Court must conclude at this stage, as a matter of law that the School Board did not act arbitrarily and without consideration of "due process" in its determination to suspend the two students named as plaintiffs. The Court must also conclude that the presence on the Vigor campus of the plaintiffs would, in fact, be disruptive of the orderly educational process for the 1667 students there enrolled, and that they should not be re-admitted at this time. Indeed, Kelvin Hudson was re-admitted and had to again be suspended. The fact that there has been no subsequent disruptive conduct at the school since the action taken by the School Board as it applied to these and other students, is indicative that the disciplinary procedures followed were in fact required.

The behavior of the students in question does not involve actions taking place beyond the confines of the school itself, and though the affidavits and complaint refer to matters and things that transpired off school premises, the discipline of these students was a product of the actions taken by them on the school campus itself where riots were involved, and their suspensions were directly related to such actions.

Subsequent to the actions of the authorities in suspending the students, these students were given an opportunity to attend what is known as the "Continuing Learning Center". In fact, one of the students has now enrolled in the center and, if he applies himself diligently, the Court is informed that he will be permitted to receive full academic credits for the year involved. The other student has been afforded the same opportunity but has not yet availed himself of that opportunity, and it is not known to the authorities of the School Board whether he will or will not.

It is contended that the availability of the procedures at the Continuing Learning Center constitute a stigma that in fact would deprive these plaintiffs of some of their constitutional rights. With this the Court cannot agree, for if there is stigma to attach, it comes from the inability of the students themselves to accept their surroundings and adjust to the existing conditions which others have, and it is this failure that prompts these students being at the place where they are. In this case, stigma, if any, comes to these students from the fact that they, contrary to that of the 1667 others, apparently have not yet learned how easy it can be to get along with your fellow man, a lesson as vital to their development and growth as is the learning of the three R's. This Court finds that because of the availability and willingness on the part of the School Board to afford to these plaintiffs and others learning opportunities equivalent in nature to afford academic progress equal to those otherwise in the system, without penalty, that under the circumstances there is no irreparable

**1380**

harm due to accrue to these plaintiffs if they will but avail themselves of such opportunity.

The Court specifically finds from the pleadings and evidence in this cause that notice containing the charges and grounds upon which suspension was predicated was given to the plaintiffs and the nature of the hearings were outlined to them including explanation of the procedures which they could follow to contest the determination of the authority invoking their suspension. This Court further finds that in the exercise of the rights attendant to the hearings available to the plaintiffs, ample opportunity was available for the presentation of both sides of the issue and that the rudiments of an advisary proceeding were, in fact, presented by such proceedings. This Court also finds from the evidence and the pleadings and the arguments of counsel that there was and is a justifiable basis for the conclusion that there was at the time and now exists a reasonable basis for a finding that irreparable harm would occur to the disciplinary procedures of the Mobile County School Board and particularly to the safety and well-being of the students enrolled at Vigor High School if these particular students were re-admitted to the school, not only as a result of the threat which they themselves pose but equally important, the threat that such an action would have on the disciplinary procedures employed which have brought about a modicum of stability in a very tense and volatile situation, the breakdown of which may well deprive equal protection of the law to those students enrolled in the system who have seen fit to exercise good judgment and common sense in their day-to-day dealings with their fellow students.

It is therefore the conclusion of the Court that the motion for temporary restraining order and preliminary injunction is hereby denied and the cause ordered set for hearing in regular course on the merits.