**Travis JOHNSON and Sheryl Johnson, as Next Friends of Damon Johnson, a Minor Child, Plaintiffs,**

v.

**HUMBLE INDEPENDENT SCHOOL DISTRICT, Defendant.**

**Civ. A. No. H–92–2390.**

United States District Court, S.D. Texas, Houston Division.

Aug. 17, 1992.

Arnold A. Vickery, Houston, Tex., for plaintiffs.

J. Timothy Brightman, Bracewell & Patterson, Houston, Tex., for defendant.

MEMORANDUM AND ORDER

WERLEIN, District Judge.

On Friday, August 14, 1992, Plaintiffs Travis and Sheryl Johnson's Motion for Temporary Injunction (Document No. 1A) came on for hearing. The Court, having received and considered the evidence, authorities, and arguments presented by counsel, and for the reasons set forth below, is of the opinion that the motion should be DENIED.

I. *Background*

Plaintiffs Travis and Sheryl Johnson filed this suit as Next Friends of Damon Johnson ("Johnson"), their minor child. Plaintiffs seek a reversal of Defendant Humble Independent School District's

("HISD") decision to expel Johnson from the Spring 1992 and Fall 1992 school terms.

Johnson is a fifteen year old student at Humble High School, located in Harris County, Texas. On the morning of May 20, 1992, Johnson was involved in an altercation with one of the school's athletic coaches, Jeff Carrigan ("Carrigan"). Johnson admits that during the incident he swung his fist at Carrigan, striking Carrigan in the eye.

In response to this episode, a hearing was held at Humble High school. Coach Carrigan was not present at this hearing. It was determined that, pursuant to Section 21.3011(b) of the Texas Education Code[1], Johnson should be expelled from school for the remainder of the Spring 1992 semester and for all of the Fall 1992 semester. Plaintiffs appealed Johnson's expulsion to the Humble Independent School District Board of Trustees as permitted by Section 21.3011(e) of the Texas Education Code, and the Board upheld the expulsion.

Thereafter, Plaintiffs filed the present suit in the 215th Judicial District Court for Harris County, Texas seeking to reverse Johnson's expulsion. Section 21.3011(e) of the Texas Education Code provides for de novo review of Board decisions by a state district court for the county in which the school district's central administrative office is located. Plaintiffs contend that Johnson was denied the opportunity to confront and cross-examine Carrigan, the primary witness against him, at the hearing and that such denial constituted a violation of Johnson's rights under the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution, the Texas Constitution, Section 21.3011(e) of the Texas Education Code, and 42 United States Code § 1983. Plaintiffs seek a temporary injunction enjoining Defendants HISD from prohibiting Johnson's attendance and enrollment in the regular classes for the Fall 1992 semester of Humble High School. Defendant HISD removed the case to federal court on the grounds that a federal constitutional question is presented.

## II. *Discussion*

■ To obtain a preliminary injunction, the movant must establish: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat that irreparable injury will result in the absence of the injunction; (3) that the threatened harm to the movant outweighs the threatened harm to the non-moving party; and (4) that granting the injunction will not disserve the public interest. *Southerland v. Thigpen*, 784 F.2d 713, 715 (5th Cir.1986); *Mississippi Power & Light*, 760 F.2d 618, 621 (5th Cir.1985); *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974); *United Latin Amer. Cit. v. Pasadena Ind. Sch. Dist.*, 662 F.Supp. 443, 446–447 (S.D.Tex.1987). If any one of these four elements is lacking, the party seeking the injunction cannot prevail. In the case at bar, the Court is of the opinion that Plaintiffs have failed to establish these requisite elements for obtaining preliminary injunctive relief. Plaintiffs most especially have failed to show a substantial likelihood of success on the merits of their due process claim.

In the case at bar, Plaintiffs allege that HISD denied Johnson procedural due process when Johnson was suspended without having been permitted to confront or cross-examine Coach Carrigan at the expulsion hearing. In order to prevail on any due process claim, a plaintiff first must show that he possesses a recognized liberty or property interest. The United States Supreme Court has held that "the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the due process clause...." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). Once it is determined that due process applies, the question remains what process is due. *Morrissey v.*

---

1. Section 21.3011(b) provides that "[a] student may be removed from class and expelled without resort to an alternative education program under Section 21.301 of this code if the student, on school property or while attending a school-sponsored or school-related activity on or off school property: (1) assaults a teacher or other individual...." 21 Tex.Educ.Code § 21.-3011(b).

*Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). While it is clear that "[a] student charged with misconduct may not be suspended from a public school without the 'minimum procedures' required by the due process clause," *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 262 (5th Cir.1985), *citing Goss*, 419 U.S. at 574, 95 S.Ct. at 736, "[i]n the context of school suspension hearings, [the Fifth Circuit] ha[s] cautioned that 'the process due may vary in particular cases depending upon the circumstances.'" *Id., citing Keough v. Tate County Bd. of Educ.*, 748 F.2d 1077, 1081 (5th Cir.1984).

In *Goss v. Lopez*, the United States Supreme Court first addressed the issue of what process is due public students in school suspension cases. While *Goss* specifically limited itself to "the short suspension, not exceeding ten days," it nevertheless "establishes the *minimum* requirements for long-term expulsions as well." *Newsome v. Batavia Local School Dist.*, 842 F.2d 920 (6th Cir.1988) [emphasis added]. These minimum requirements include "oral and written notice of the charges against [the student] and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581, 95 S.Ct. at 740.

While the Supreme Court in *Goss* specifically cautioned that "suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures," *Goss*, 419 U.S. at 584, 95 S.Ct. at 741, the high court has yet to determine what such "more formal procedures" might include. In the absence of such a ruling, lower federal courts evaluating the procedures used in long-term suspension cases, after assuring that the student was afforded the "minimum procedures" described above, have applied a balancing test similar to the general procedural due process analysis set forth by the Supreme Court in *Mathews v. Eldridge. See Newsome*, 842 F.2d at 923, in which the court, considering the procedures afforded a student expelled for the remainder of a semester, stated that "[w]ithout the aid of Supreme Court authority directly on point, we are left with resolving the procedural due process issues presented in this appeal under the more general rubric of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)." The *Mathews* analysis provides for a flexible, policy-oriented analysis of procedural due process issues in which three competing factors are balanced against each other. These factors include: (1) the private interest that will be affected by the official action; (2) the probative value, if any, of additional or substitute safeguards; and (3) the government's interest, including the fiscal and administrative burden that the additional or substitute procedural requirements would entail. *Mathews*, 424 U.S. at 334–335, 96 S.Ct. at 902–903. As articulated by the Fifth Circuit, "[t]he sufficiency of procedures must be judged in the light of the parties, the subject matter and the circumstances involved." *Brewer*, 779 F.2d at 262, *citing Keough*, 748 F.2d at 1081; *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir.1970).

With regard to the first of the *Mathews* elements, the private interest affected by the official action, there can be little doubt that "a United States citizen's interest in the free public education to which he is entitled is 'important.'" *Newsome*, 842 F.2d at 924, *citing Goss*, 419 U.S. at 574, 95 S.Ct. at 736. Accordingly, where a suspended student has been afforded the minimum process required by *Goss*, a court evaluating the student's procedural due process claims must focus upon whether "the probable value of the additional, pre-expulsion safeguards proposed by [the student] to protect his important interest in a free public education [is] outweighed by the burden that would be placed upon the school district by the additional safeguards." *Newsome*, 842 F.2d at 924. In cases like the one at bar, in which the "additional safeguard" proposed by the suspended student is the right to confront and cross-examine his accusers, courts considering the issue consistently have construed the balance in favor of the educational institution.

In *Brewer by Dreyfus v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 262 (5th Cir.1985),

a high school student was suspended from attending classes for an eight week period after a school board hearing at which he was found guilty of dealing and using illegal drugs. Brewer's mother, as next friend for her son, sued the school district under 42 U.S.C. § 1983 on the grounds that Brewer was denied due process of law in the suspension hearings. Specifically, Plaintiffs complained that Brewer was not given an opportunity to confront and cross-examine his accusers. Finding that Brewer had not been denied procedural due process, and upholding his suspension, the Fifth Circuit observed:

> Brewer's argument—that the Campus Review Board should not have considered evidence that he had used and sold drugs at school without giving him the opportunity to confront and cross-examine the witnesses to these acts—implicitly confuses two quite distinct processes: school disciplinary actions and criminal sentencing proceedings. Apart from the fact that their application would not likely have here led to a different conclusion in any event, we reject any suggestion that the technicalities of criminal procedure ought to be transported into school suspension cases. We are mindful of the burden placed on school administrative facilities by the notice and hearing requirements already imposed during the guilt phase of suspension hearings. We decline to escalate the formality of the suspension process even further by requiring school administrators to provide a fact hearing as to the accuracy of each bit of evidence considered in determining the appropriate length of the punishment, a requirement that is not imposed even in criminal cases.

*Brewer*, 779 F.2d at 263. The Court determined that summaries of statements from three students describing specific incidents of Brewer's use or sale of drugs on campus, read to Brewer at the hearing, constituted sufficient confrontation to meet the requirements of procedural due process. *Id.*

The holding of the Fifth Circuit in *Brewer* is consistent with other Fifth Circuit decisions, *see McClain v. LaFayette County Bd. of Ed.*, 673 F.2d 106, 109–110 (5th Cir.), reh. denied, 687 F.2d 121 (1982) (in which taped statements by eyewitnesses played at the expulsion hearing, in lieu of live testimony, were held sufficient confrontation to satisfy the mandates of procedural due process); *Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697 (5th Cir.1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975) ("[plaintiffs] contend that we should read the Supreme Court's *Goldberg* and Morrissey decisions as expanding the requirements of *Dixon* to add to them universal confrontation and cross-examination of witness, especially where severe punishments are meted out on disputed facts. We decline to do so."); and with decisions of other circuit courts considering the issue. For example, in *Newsome v. Batavia Local School Dist.*, 842 F.2d 920 (6th Cir.1988), a student expelled for using and selling marijuana on school property challenged the procedures used at his expulsion hearing on the grounds that he was not afforded an opportunity to cross-examine the student eyewitness and the school principal and superintendent. In upholding the student's expulsion, the Sixth Circuit stated:

> We do not take issue with Newsome's claim that cross-examination would have improved the fact-finding process.... [H]owever, *Mathews* instructs us to balance the benefit that would be derived from the cross-examination of school authorities during pre-expulsion proceedings, together with the important interest that a public school student has in his education, against the burden that cross-examination would place on the school board or other decisionmaker. We hold that the burden of cross-examination on the administration of school discipline outweighs the benefits to be derived from that procedure.... To saddle [the school administration] with the burden of overseeing the process of cross-examination (and the innumerable objections that are raised to the form and content of cross-examination) is to require of them that which they are ill-equipped to perform. The detriment that will accrue to

the educational process in general by diverting school board members' and school administrators' attention from their primary responsibilities in overseeing the educational process to learning and applying the common law rules of evidence simply outweighs the marginal benefit that will accrue to the fact-finding process by allowing cross-examination.

*Id.* at 925–26.

Plaintiffs argue that these cases should be distinguished on the grounds that they involved expelled students who specifically admitted engaging in the wrongful activities of which they were accused. The charge here is that Johnson assaulted one of his teachers. Assault is defined in the Humble High School Student–Parent Manual ("the Manual"), for the purposes of student discipline by school officials, as "intentionally or knowingly causing bodily injury to another person." The fact is that Johnson did admit to striking Kerrigan with his fist, and the act was observed by several witnesses. Given the admission of Johnson that he caused bodily assault as defined by the Manual of the school, and the fact that Johnson has not contended that he did so unknowingly or unintentionally, the Court concludes that the suggested distinction argued by Plaintiffs has no merit.

Johnson contends, however, that it was not really an assault because the blow he struck was justified, or provoked by his teacher. Even assuming that Johnson was entitled to negate the assault offense by bringing evidence of justification, there is no question that he was afforded adequate opportunity to do so, and that the procedures afforded him at the hearing fully comported with the requirements of due process. First, it is clear that Johnson was on notice of the possible consequences of an act such as the one at issue here. Johnson admitted receiving a copy of the Humble High School Student–Parent Manual ("the Manual") before commencing attendance at Humble High School. (Stipulations of Fact at p. 2). Page DM–9 of the Manual clearly states that "[s]tudents are prohibited from assaulting a teacher or other individual on school property...." Additionally, page DM–8 of the Manual lists assault as a Class A breach of the Student Code of Conduct, and page DM–11 warns that

class A breaches of the Student Code of Conduct are of such a serious nature that the student shall be subject to expulsion from school for the remainder of the school year according to T.E.C. Section 21.3011, unless the offense occurs during the final six weeks of the school year and then the expulsion may also be imposed for the fall semester of the next school year.

Second, with regard to whether Johnson was provided with prior notice of the specific charges, witnesses, and evidence against him, Johnson's counsel for the expulsion hearing, Ms. Frances Madden, admitted that both she and Johnson's parents received, in advance of the hearing, letters from school officials setting forth the misconduct with which Johnson was charged and informing Johnson and his counsel of the witnesses and documentary evidence that the school would present against him at the hearing. Plaintiffs have not taken issue with the adequacy of such notice.

Finally, with regard to the procedures afforded Johnson at the expulsion hearing itself, the evidence presented at the temporary injunction hearing indicates that Johnson was given more than ample opportunity to present his version of the events of May 20, 1992. Although neither Johnson nor Coach Kerrigan testified in person at the expulsion hearing, both submitted written statements to the hearing examiner setting forth their respective accounts of the incident. In addition, Johnson's attorney was permitted to, and did in fact call several student witnesses, at least one parent, and the school nurse to testify in Johnson's behalf. Moreover, Johnson's counsel was permitted to cross-examine each of the witnesses who gave live testimony on behalf of the school board, and to submit affidavits and other documentary evidence to rebut the charge of assault. Johnson has not challenged the impartiality of the hearing examiner.

48

■ In light of these facts, it is the opinion of the Court that the procedures afforded Damon Johnson in the expulsion hearing satisfied the mandates of procedural due process. Consistent with the view of the Fifth Circuit, this Court rejects any suggestion that the technicalities of criminal procedure ought to be transported into school suspension cases, and finds that the burden such a requirement would place on school administrative facilities substantially outweighs any marginal benefit that might accrue to the factfinding process.

### III. *Order*

Because Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their procedural due process claim, Plaintiffs' Motion for Temporary Injunction (Document No. 1A) is hereby DENIED.