**Virginia Francis HAMMOCK, a minor, By and Through her mother and next friend, Jude HAMMOCK, Plaintiff,**

v.

**Larry KEYS, Ernie Rosado, Toni Stanton and Albert Thomas, individually; The Baldwin County Board of Education; Anthony P. Kaiser, Dennis V. Stastka, Don McGriff, Julia A. Summerlin, Ruth S. Underwood, James D. Williams, and Robert A. Wills, as members of the Baldwin County Board of Education; Albert D. Thomas, as Superintendent of the Baldwin County Board of Education; Larry Keys, as Principal of the Gulf Shores High School, Ernie Rosado and Toni Stanton, as Assistant Principals of Gulf Shores High School, Defendants.**

No. Civ.A.00–0264–CB–C.

United States District Court,
S.D. Alabama,
Southern Division.

April 11, 2000.

**1224**

James W. May, Foley, AL, for Virginia Frances Hammock, a minor who sues by her mother and next friend Jude Hammock, plaintiff.

Robert C. Campbell, III, Mobile, AL, Frank G. Taylor, Sintz, Campbell, Duke & Taylor, Mobile, AL, for defendants.

### ORDER

BUTLER, Chief Judge.

This matter comes before the Court on a motion for preliminary injunction (Doc. 2).[1] A preliminary injunction hearing was held and evidence was presented on April 5, 2000. Upon review of the evidence and applicable law, the Court finds that the motion for preliminary injunction is due to be, and hereby is, **DENIED.**

1. Plaintiff originally sought a temporary restraining order (Doc. 2). However, upon denial of the TRO on March 30, 2000, the Court converted the motion to a motion for preliminary injunction (Doc. 5).

2. *See also Craig v. Selma City Sch. Bd.,* 801 F.Supp. 585, 594 (S.D.Ala.1992) ("[T]he

## I. INTRODUCTION

This case was brought by Virginia Hammock, a high school senior, by and through her mother Jude Hammock, after she was suspended and subsequently expelled from Gulf Shores High because marijuana fragments were found in her vehicle located on the school parking lot. Plaintiff brings suit pursuant to 42 U.S.C. § 1983 and claims that her equal protection and procedural and substantive due process rights were violated and that the regulations adopted by the Baldwin County Board of Education are unconstitutionally vague and ambiguous. Let there be no mistake; the issue before this Court is not whether the decision to suspend or expel the Plaintiff was a correct or an appropriate one in the Court's view. "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).[2] Instead, this Court must decide whether Plaintiff is likely to succeed on the merits of her claim that the actions taken by the Defendants amounted to a constitutional deprivation, and if so, whether in the absence of an injunction she will suffer irreparable injury because of that deprivation.

## II. FACTS

On February 11, 2000, Anthony Grisby, an Orange Beach police and D.A.R.E. officer, and John Hamrick, a Gulf Shores police officer, along with Ernie Rosado, an Assistant Principal, conducted a search with canines in the Gulf Shores High School parking lot. The search was conducted after school officials received numerous reports that there was a "drug

Court's task ... is not to review the correctness of the decisions of [the] Principal [ ] or the Selma City School Board in deciding to punish the plaintiffs, but to decide whether the procedures employed in reaching those decisions were so inadequate as to rise to the level of a constitutional tort").

problem" in the parking lot. After two different dogs alerted on Hammock's vehicle, Rosado notified Assistant Principal Toni Stanton, who then got the Plaintiff from her classroom. While in the hallway, Rosado explained to the Plaintiff what had occurred in the parking lot. Rosado testified that the Plaintiff was "stunned," and that she reentered the classroom to get her keys to the vehicle. Rosado also testified that while retrieving her keys Plaintiff told another student "Oh, I am going to be expelled." Plaintiff requested that she be permitted to call her parents. She was not permitted to call her parents until after the vehicle was opened and searched.

It is undisputed that marijuana was found in the vehicle.[3] A certain quantity of the fragments were field tested on site, the results of which indicated that the material was marijuana. Another quantity was later confirmed to be marijuana by a lab test.[4] The exact amount of marijuana is unknown. Officer Grisby testified that a "small amount" of the substance was found and that it consisted of a "leafy residue." He would not rule out that it could have come from someone's clothing or shoes, but he also indicated that the amount and type found was consistent with a scenario in which one dropped marijuana when rolling a "joint" or filling a pipe. Officer Hamrick testified that the material was found on both the passenger and driver sides of the floorboard and described the fragments as "seeds, stems, and leaves." Hamrick also testified that the amount of residue led him to believe that marijuana was used in the vehicle more than once.

After the search, Plaintiff was sent to the school office. Rosado indicates that she was given an opportunity to discuss the incident and her parents were notified. (Def.'s Ex. 3). Once Plaintiff's parents arrived, Rosado explained to them what had occurred. The Disciplinary Referral form completed on February 11, 2000, indicates that Plaintiff was suspended for ten days denoting the dates of suspension as February 11, 14–24.[5] Upon suggestion of her parents, Plaintiff refused to sign the Disciplinary Referral form and she left school. There is some dispute as to whether she left on her own or at her parent's direction, or if she was directed to leave by school officials. However, it is clear that she left at 1:45 p.m. and received credit for the day with the exception of the last period.

On February 14, 2000, Principal Larry Keys sent a letter to Plaintiff's father which confirmed the suspension for "possession of inappropriate material." The letter references the Baldwin County Public School Board Policies on drug possession and indicates that expulsion would be pursued. (Plaintiff's Ex. 4; Def.'s Ex. 2). An "Expulsion Notice" and a police report prepared by officer Hamrick were also presented to the Hammocks on this date. The police report states that "marijuana residue [found in the Plaintiff's vehicle] was field tested and showed positive for

---

3. What was thought to be a "blue pill" was also found in the vehicle. Plaintiff contends that the "blue pill" was merely a breath mint. While this assertion has not been confirmed, it does not appear that it was a controlled substance or that it was used as the sole basis for the disciplinary action taken. The Disciplinary Referral form indicates that the "pill" was found. (Plaintiff's Ex. 4; Def.'s Ex. 2) However, the February 14 suspension notification letter by Larry Keys, the Principal of Gulf Shores High School, states that "[i]f the Forensic Sciences report confirms the pill to be a controlled substance it will be use (sic) in the expulsion process." (Plaintiff's Ex. 4; Def.'s Ex. 2). The February 28 "recommendation of expulsion" letter sent by Keys states

"that the blue pill found in Miss Hammock's vehicle was not considered in making this determination." (Plaintiff's Ex. 6; Def.'s Ex. 5).

4. Plaintiff's complaint indicates that such a small amount of the substance was found in the vehicle that it was entirely consumed in the field test. However, Plaintiff conceded at the hearing that this assertion is inaccurate.

5. At the preliminary injunction hearing, Defendants argued that the actual suspension extended over a nine school day period, February 14–24.

THC." The expulsion notice states: "If you desire to discuss the reasons for this action or to request an administrative hearing, you are required to contact Mr. Rosado . . . within five (5) days of the date on this notice. Although not required, you and your students have the right to be represented by legal counsel and present witnesses." A hearing was requested as indicated by a February 22 letter by Keys which notifies the Hammocks of the time and place of the hearing and again advises that the Plaintiff could "bring any witness(es) that [she chose]." The letter also instructs the Hammocks to notify the school if they would be represented by counsel.

A hearing was held on February 24, 2000, before Principal Keys and Assistant Principal Rosado. The Plaintiff and her parents were in attendance and were represented by counsel. No evidence was presented to support the expulsion. However, Keys told Plaintiff's attorney that he would hear and consider any facts, evidence, or material that he wished to present. It is unclear whether any evidence was presented by Plaintiff, but it is clear that Plaintiff had the opportunity to present such evidence.

On February 28, 2000, Keys wrote a letter to Plaintiff's parents regarding the February 24th hearing. The letter states that "[i]t is my determination that Miss Hammock be expelled from Gulf Shores High School . . . . and that she be permitted to attend the Alternative School in Bay Minette." The letter also states that Gulf Shores High School would provide the textbooks and materials necessary to complete Plaintiff's work at the Alternative School and advises Plaintiff of her right to appeal this determination to Dr. Albert D. Thomas, the Superintendent of the Baldwin County Board of Education.

On March 3, 2000, a hearing was held before Superintendent Thomas. Both Plaintiff and the School Board were represented by counsel. The charges were again presented to Plaintiff. According to Thomas, no witnesses were called by the Plaintiff, and Plaintiff's counsel made arguments to suggest that the fragments found in the vehicle were alfalfa fragments. Plaintiff's counsel also presented the package from which the "blue pill" allegedly came. According to testimony elicited at the preliminary injunction hearing, Thomas did not look at the package. Plaintiff also presented a report to Thomas indicating that she had no illegal drugs in her system on February 18, 2000, seven days after the incident.[6] Thomas questioned the Plaintiff, and she stated that she did not know about the fragments nor had she smoked marijuana in the vehicle. On March 8, 2000, Dr. Thomas wrote a letter to the Hammocks informing them that the expulsion of Plaintiff would be upheld and suggesting that they consider the option of the Alternative School, which the Plaintiff, for reasons not presented in the record, has elected not to attend.

## III. PRELIMINARY INJUNCTIONS STANDARD

■ A party seeking a preliminary injunction must establish the following four factors: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury, (3) that its own injury would outweigh the injury to the nonmovant, and (4) that the injunction would not disserve the public interest. *Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir.1999); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998). The Court should be mindful that a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly satisfied the burden of persuasion as to the four requisites. *McDonald's*, 147 F.3d at 1306; *Northeastern Fl. Chapter of the Ass'n of Gen. Contrac-*

---

**6.** Testimony at the preliminary injunction hearing indicated that Thomas did not find this evidence particularly significant because Plaintiff was being expelled for possession not use of marijuana.

*tors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990). The first two factors of the preliminary injunction standard are determinative in this case.

## IV. SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Procedural Due Process

■ The Fourteenth Amendment to the United States Constitution provides that a State shall not deprive any person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1. While there is no constitutional right to a public education, when state law has created an entitlement to a public education, a property interest arises. *Goss v. Lopez*, 419 U.S. 565, 572–573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The Alabama Constitution provides that the legislature shall establish a public school system for the benefit of children between the ages of seven and twenty-one. ALA. CONST., Art. XIV, § 256. Thus, school age children in Alabama are entitled to the procedural protections of the Due Process Clause of the United States Constitution. What process is due in school discipline cases varies on what form of punishment or discipline is imposed. *See generally Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *see also Craig*, 801 F.Supp. at 591. Because Plaintiff's suspension and expulsion are subject to different procedural due process requirements, the suspension and expulsion will be addressed separately in turn.

### 1. Suspension

■ In *Goss v. Lopez*, the United States Supreme Court clearly set out the requirements of procedural due process when a student faces suspension of ten days or less. 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). In such cases, due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss*, 419 U.S. at 581, 95 S.Ct. 729. "[A]s a general rule notice and hearing should precede removal of the student from school," unless the student poses danger to others or constitutes a threat to the academic process. *Id.* at 582, 95 S.Ct. 729. The hearing need not be a formal one in which the student is afforded the opportunity to secure counsel, to call his own witnesses, or to cross-examine witnesses. *Id.* at 583, 95 S.Ct. 729. Instead, the Court described the requisite hearing as "an informal give-and-take between the student and disciplinarian, preferably prior to suspension." *Id.* at 584, 95 S.Ct. 729.

■ Plaintiff contends that she was not given a "pre-deprivation" hearing, i.e., a hearing *prior to* her suspension, as required by *Goss*. As the Eleventh Circuit explains, [t]he dictates of *Goss* are clear and extremely limited: "Briefly stated, once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands." *C.B. v. Driscoll*, 82 F.3d 383, 386 (11th Cir.1996); *see also Lamb v. Panhandle Community Unit Sch. Dist.*, 826 F.2d 526, 528 (7th Cir.1987) (*in accord*) (finding informal discussion after incident between student and Principal sufficient if student was permitted to present his version of facts); *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 14 (1st Cir.1988) (due process requirements met; issue is whether the individual has an opportunity to answer, explain, and defend and not whether the hearing mirrored a criminal trial).

In short, the Court is not persuaded that Plaintiff is likely to succeed on the merits of her claim that she was not afforded due process regarding her suspension. Plaintiff was notified of the charges against her and she was present when the vehicle was searched. Plaintiff has made no claim that Assistant Principal Rosado foreclosed the opportunity to present her version of the facts. On the contrary, Rosado testified

and his memorandum for the record indicates that an "informal give-and-take" occurred, and Plaintiff had the opportunity to discuss the incident in the school office. *Goss* and due process require no more than what Plaintiff was provided on February 11, 2000, prior to her suspension.[7]

## 2. Expulsion

The *Goss* holding is specifically limited to short suspensions. "Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Goss*, 419 U.S. at 584, 95 S.Ct. 729. Therefore, a student facing expulsion is due a higher standard of due process than one facing temporary suspension. *L.Q.A. v. Eberhart*, 920 F.Supp. 1208, 1217 (M.D.Ala.1996). In the absence of Supreme Court guidance, most courts turn to *Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150 (5th Cir.1961) to determine what process is due in expulsion cases.[8] *Dixon* involved college students who were expelled without notice, hearing, or appeal for participation in a civil rights demonstration. *Dixon*, 294 F.2d at 151. The Fifth Circuit held that due process requires notice and some opportunity for hearing before a public school student can be expelled for misconduct. *Id.* at 158.

The Court noted that "notice should contain a statement of the specific charges," and "[t]he nature of the hearing should vary depending upon the circumstances of the particular case." *Id.* The Court found that under the facts presented, the *Dixon* plaintiffs deserved more than an informal interview. *Id.* Particularly, the Court noted that "a hearing which gives the Board or the administrative authorities ... an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved." *Id.* at 159. However, the Court added that "[t]his is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required." *Id.*

The Court finds that Plaintiff has not sufficiently demonstrated that Defendants failed to provide her due process in the expulsion process. Plaintiff was afforded two hearings regarding her expulsion. On February 24, 2000, a hearing was held by Principal Keys and Assistant Principal Rosado concerning the proposed expulsion.[9] "Specific notice of the charges" was given prior to the hearing in the February 14, 2000, letter from Keys and the attached police report. Notice of the charges and the reason for the proposed

7. The dispute over whether Plaintiff was suspended for nine or ten days has no bearing on this analysis; the *Goss* standard applies in either circumstance.

8. Courts also look to *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which is not a school discipline case, but provides a "policy-oriented analysis of procedural due process issues in which three competing factors are balanced against each other. These factors are: (1) the private interest that will be affected by the official action; (2) the probable value, if any, of additional or substitute procedural safeguards; and (3) the [school's] interest, including the fiscal and administrative burden that the additional or substitute procedural requirements would entail." *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 924 (6th Cir.1988) (citing *Mathews*, 424 U.S. at 334–35, 96 S.Ct. 893). Applying *Mathews*, the question becomes, " 'Is the probable value of the additional pre-expulsion, procedural safeguards proposed by

[Hammock] to protect [her] important interest in a free public education outweighed by the burden that would be placed upon the school district by the additional safeguards?' " *Newsome*, 842 F.2d at 924.

9. Plaintiff argues that this hearing was the only hearing *prior to* expulsion. In other words, Plaintiff asserts that Principal Keys expelled her when he sent the February 28 letter notifying her of his determination that she be expelled. Defendants contend that Principal Keys is only authorized to recommend expulsion, while the Superintendent actually imposes expulsion. Ultimately, the Court finds that the dispute is immaterial. Both hearings met due process requirements. *See Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 263 (5th Cir.1985) ("Although schools may wish to provide appellate mechanisms to cure procedural errors that can creep into initial suspension proceedings, they are not required to do so by the Constitution. Due process need only be provided once").

dismissal, i.e., "Seeds/Residue of a controlled substance," were reiterated in the "Expulsion Notice" dated February 14, 2000. Plaintiff was represented by counsel and allowed to present evidence to negate the charges at the February 24 hearing before Principal Keys.[10]

A second hearing was held before Superintendent Thomas on March 3, 2000. Thomas testified that he presented the charges to Plaintiff, her parents, and her attorney. Plaintiff was permitted to call any witness she saw fit, but chose not to do so. Furthermore, she was allowed to present exculpatory evidence such as a negative urinalysis and her testimony that she was not aware of the fragments on the floorboard. While it is not clear whether she presented additional exculpatory evidence, she was clearly allowed to offer such evidence.[11] If the "blue pill" was basis for the expulsion, Thomas's refusal to look at the breath mint package may have raised this Court's constitutional brow, but it clearly was not. Under such circumstances, Plaintiff will likely fail on the claim that she was not afforded due process in her expulsion. Due process demands only that Plaintiff be permitted to present her side of the story, not that school administrators accept it.

■ Plaintiff also argues that she was denied due process because there was no evidence presented at either hearing to support the charge that she was in possession of marijuana. This contention is a mild overstatement. Principal Keys and Superintendent Thomas considered the report prepared by Officer Hamrick and the Assistant Principal's report, both of which state that marijuana residue was found in the vehicle. Admittedly, no additional evidence was presented at either hearing, but Plaintiff has provided this Court with no case law to suggest that due process command that there be. *See Fuller v. Decatur Public Sch. Bd. of Educ.*, 78 F.Supp.2d 812, 823 (C.D.Ill.2000). Indeed, courts staunchly resist the suggestion that school discipline hearings should emulate criminal trials. *See Dixon*, 294 F.2d at 159 (a full-dress judicial hearing is not required); *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir.1987)[12]

Furthermore, the nature of the hearing must vary depending on the circumstances of the case. *See Dixon*, 294 F.2d at 159. In this case, Plaintiff does not dispute that

**10.** Plaintiff asserts that this hearing failed of the essential requirements of due process because the hearing lacked "an unbiased and impartial decision maker" as demonstrated by the fact Keys conducted the hearing and no witnesses were called to support the charges. While it is true that "an impartial decision-maker is a requisite procedural safeguard under the Fourteenth Amendment," Plaintiff has not sufficiently established that Keys and Rosado were not impartial. *Craig*, 801 F.Supp. at 592. After all, "[a] school administrator involved in the initiation and investigation of the charges is not thereby disqualified from conducting a hearing on the charges." *Brewer*, 779 F.2d at 264. In fact, "[i]n the school context, it is both impossible and undesirable for administrators involved in incidents of misbehavior always to be precluded from acting as decision makers." *Driscoll*, 82 F.3d at 387 n. 3. In sum, Plaintiff has not shown that either school administrator had "a pre-existing animosity toward [her] or had developed a bias because of [their] involvement in [her] case." *See Baxter v.*

*Round Lake Area Sch.*, 1993 WL 478994 (N.D.Ill.); *see also Long v. Thornton Township High Sch.*, 82 F.R.D. 186 (N.D.Ill.1979) (hearing officers are presumed to be unbiased and prior involvement in case is not due process violation); *Hillman v. Elliott*, 436 F.Supp. 812, 815 (W.D.Va.1977).

**11.** Plaintiff offered evidence at the preliminary injunction hearing that many others used the vehicle, the vehicle was purchased only six months prior to the incident, and she is a good student with few disciplinary infractions.

**12.** *See also Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697, 701 (5th Cir.1974) ("There is a seductive quality to the argument—advanced here to justify the importation of technical rules of evidence into administrative hearings conducted by laymen ... In this view we stand but a step away from the application of the strictissimi juris due process requirements of criminal trials to high school disciplinary processes. It will not do.").

the substance found in her vehicle was marijuana; she contends that no connection between her and the marijuana was established. Plaintiff certainly had the opportunity to present this defense and explanation. If her complaint is based upon the School Board's failure to call particular witnesses, Plaintiff has not shown that failure to present the testimony of the officers or Assistant Principal Rosado constitutes a due process violation.[13] *See Johnson v. Humble Indep. Sch. Dist.*, 799 F.Supp. 43, 47 (S.D.Tex.1992) (high school student afforded due process in expulsion hearing even though teacher he allegedly hit was absent from hearing). After all, this is not a case in which a decision maker had to choose whether to believe either the accused or his accuser. *See Winnick v. Manning*, 460 F.2d 545 (2d Cir.1972).[14] Thus, even if a more exhaustive review of the evidence should have been undertaken, the Court is unwilling to find that under the circumstances more was *constitutionally* required of the Defendants. *See Gorman*, 837 F.2d at 16 ("The question presented is not whether the hearing was ideal, or whether its procedure could have been better"); *see also Johnson*, 799 F.Supp. at 47.

## B. Substantive Due Process

Plaintiff also contends that Defendants' actions violated her substantive due process rights. The grounds for this claim are not entirely clear. From her complaint, it appears that the substantive due process claim rests on the contention that there was no evidence to support a viola-

tion of a school rule that would justify expulsion. In particular, the Plaintiff again claims that there is no evidence to connect the marijuana fragments to her or which indicates that she had knowledge they were present in her vehicle.[15]

■ Regardless of the underlying basis of the claim, the Court finds that Plaintiff is unlikely to succeed on the merits of a substantive due process claim because she has not presented a situation which affords substantive due process protection. The Eleventh Circuit clearly articulates that an executive act, such as a school suspension or a transfer to an alternative school, "contravenes substantive due process rights only if, in the Supreme Court's words, the right affected is 'implicit in the concept of ordered liberty.'" *Driscoll*, 82 F.3d at 387. The *Driscoll* Court point outs that "[t]he right to attend a public school is a state-created, rather than a fundamental right for purposes of substantive due process;" therefore, that right "may be abridged so long as proper procedural protections are afforded." *Id.* at 387.

■ As in *Driscoll*, the decision to suspend and subsequently expel Plaintiff was an executive one. Accordingly, her substantive due process claims are without merit. Even assuming that substantive due process is implicated, the Court believes it unlikely Plaintiff would prevail on such a claim.[16] Courts recognizing substantive due process protection in school discipline cases find that the rational basis test applies; thus, action infringing on a person's right to an education need only be

13. The Court points out that nothing prevented Plaintiff's counsel from calling the officers, Rosado, or Keys as witnesses.

14. Under *Mathews*, the probable value of requiring a school board to call particular witnesses in this sort of case is also outweighed by the burden that would be placed upon the school district by the requirement. *Newsome*, 842 F.2d at 924.

15. At the preliminary injunction hearing, counsel for Plaintiff articulated that the lack of uniformity in the enforcement of school

regulations is the basis for the substantive due process claim. The Court finds that this argument more aptly fits under Plaintiff's equal protection claim or void-for-vagueness claim. *See infra* C.

16. Many courts in this Circuit prior to *Driscoll* assumed that a substantive due process claim is viable in student suspension and expulsion cases. *See, e.g., Nash*, 812 F.2d at 667; *Eberhart*, 920 F.Supp. at 1222; *Craig*, 801 F.Supp. at 594.

directed to a legitimate purpose and rationally related to achieving that purpose. *Eberhart*, 920 F.Supp. at 1222; *Craig*, 801 F.Supp. at 594. The purpose in this case, ensuring that schools are drug-free, is certainly a legitimate purpose. In fact, the Alabama legislature finds that this purpose is "a compelling public interest." *See* ALA. CODE § 16–1–24.1. Suspension and expulsion of a student found to be in possession of a drug, even if "possession" is interpreted by school officials to mean being found in a vehicle or locker, is rationally related to that purpose. While such an interpretation may be severe, it is not unconstitutionally arbitrary or unreasonable.[17] *Cf. Nash*, 812 F.2d at 667.

## C. Equal Protection

■ The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny any person within its jurisdiction equal protection of the laws. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313, (1985); *see also Curse v. Director, Office of Workers' Compensation Programs*, 843 F.2d 456, 463 (11th Cir. 1988). In order to maintain an equal protection claim, a plaintiff must show that similarly situated persons were treated dissimilarly. *Id.; Smith v. Severn*, 129 F.3d 419, 429 (7th Cir.1997) (an equal protection violation occurs only when different legal standards are arbitrarily applied to similarly situated individuals); *Jensen v. Reeves*, 45 F.Supp.2d 1265, 1274 (D.Utah 1999) (suspension of elementary student for misconduct did not violate equal protection absent showing that similarly situated students had been treated differently).

Plaintiff contends that the School Board and school administrators have violated her right to equal protection because they have failed to uniformly enforce school regulations. The complaint alleges that "Plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." For support, Plaintiff offered the testimony of Susie Nelson, the Principal of Rosinton Elementary School in Baldwin County. Ms. nelson testified that she suspended five elementary students for three days after a parent found marijuana seeds at her home and it was later discovered that, two weeks prior, the seeds were at school. Ms. Nelson also testified that under Baldwin County School policy, she had the option to impose out-of-school suspension "up to" expulsion. The Defendant offered testimony that this school year, three students at Gulf Shores High School were suspended and expelled for possession of drugs found in cars or lockers.[18] All of these students were permitted to attend the Alternative School.[19]

■ The Court finds that Plaintiff is not likely to prevail on an equal protection

**17.** The Baldwin County Code of Student Conduct provides that possession of an illegal drug is Class III violation and that "Principals and/or his/her designee will define the conduct necessary to establish a violation." (Plaintiffs, Ex. 9) These regulations also reference ALA.CODE § 20–2–22, which defines marijuana as "[a]ll parts of the plant Cannabis sativa L., whether growing or not." Gulf Shores High School students should have been aware of the Principal Keys's stance on the issue. Keys testified that he told the student body at numerous assemblies, and particularly the senior class on at least one occasion, that students would be responsible for the contents of vehicles they brought on campus. Furthermore, at least two students were expelled prior to the Plaintiff for illegal drugs found in their vehicles. *See infra.* Most im-

portantly, § 1983 does not give a plaintiff a right to litigate the proper construction of school regulations. *Board of Educ. of Rogers, Ark. v. McCluskey*, 458 U.S. 966, 970, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982) (citing *Wood*, 420 U.S. at 326, 95 S.Ct. 992). "A case may be hypothesized in which a school board's interpretation of its rules is so extreme as to be a violation of due process, but [Hammock's] is surely not that case." *Id.*

**18.** The 1999–2000 is the first school year Gulf Shores High School has been in operation.

**19.** At least one student chose to attend the Alternative School, and another opted to get a general equivalency diploma (GED).

claim because the Rosinton Elementary School students are not "similarly situated" to Plaintiff. First and foremost, Plaintiff, as a high school senior, is unlike a sixth grade student, and the Court rejects the proposition that equal protection requires that elementary and high school students be treated identically in school discipline cases. Certainly, a high school principal faces a more formidable challenge in the attempt to keep his school drug-free than an elementary school principal. Furthermore, the Rosinton Elementary students subsequently admitted that the marijuana seeds were brought to school during an investigation regarding drugs found at the home of one of the students.[20] In addition, Ms. Nelson testified that under school policy she had the discretion to impose expulsion. The fact that a school policy provides for a range of punishment for certain violations does not run afoul of equal protection. Likewise, the fact that three Gulf Shores High School students, at least two of whom were found to be in "possession" because of drugs found in their cars, negates any inference of an equal protection violation.[21]

### D. Void for Vagueness and Failure to Follow Regulations

■ Plaintiff also contends that the regulations adopted by the Baldwin County Board of Education are unconstitutionally vague and ambiguous. "Given [a] school's need to be able to impose disciplinary sanction for a wide range of unan-

ticipated conduct disruptive of the educational process, [ ] school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 685, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Furthermore, "vagueness challenges which do not involve the First Amendment must be examined in light of the specific facts at hand and not with regard to the disciplinary rule's facial validity." *Fuller,* 78 F.Supp.2d at 827 (citing *Woodis v. Westark Community College,* 160 F.3d 435, 438 (8th Cir.1998)). In an "as applied" analysis, the question is whether under the circumstances the regulations were sufficiently "precise to notify [Hammock] that her ... conduct ... could lead to expulsion." *Woodis,* 160 F.3d at 439.

■ Under an "as applied" analysis, Plaintiff has not shown that the regulations were so imprecise that she was not on notice that her conduct could lead to expulsion.[22] The Code of Conduct provides that possession of an illegal drug is a Class III violation and clearly indicates that a Principal defines the conduct necessary to establish the violation. (Plaintiff's Ex. 9). To the extent that Plaintiff's complaint is directed towards the amount of discretion afforded Principal Keys in defining conduct sufficient for "possession," the Court notes that "the system of public education ... relies *necessarily* upon the discretion of school administrators and

---

**20.** The Court recognizes that while there may not be a substantial difference between the amount of culpability involved when a student is caught with drugs on campus and when a student admits to having drugs on campus, this Court should not question a principal who has elected to treat students who admit drug possession with leniency.

**21.** This evidence suggests that students similarly situated to Plaintiff were, in fact, treated similarly. Plaintiff contends in her brief that Dr. Thomas testified that he "knew of instances where students Gulf Shores High School ... had been suspended for periods ranging from three to nine days for possession of drugs." Indeed, Dr. Thomas testified that he knew of one Gulf Shores High School student

suspended for drug possession. However, Plaintiff has failed to come forth with sufficient evidence to suggest that this particular student was similarly situated to her. For the same reason, the Court finds that Plaintiff's contention that Defendants have failed to adhere to ALA.CODE § 16–1–24.1 is without merit.

**22.** As a practical matter, the Court finds ignorance on this issue unlikely as well. Keys testified that he informed students that he would not tolerate drugs, weapons, or violence, and that students would be responsible for items found in their cars. Also, as noted earlier, at least two other students during this school year have been suspended and expelled for drugs found in their vehicles located on campus.

school board members." *Wood,* 420 U.S. at 326, 95 S.Ct. 992 (emphasis added). Vesting a school official with the discretion to determine which situations warrant expulsion is not only necessary "in order to maintain discipline and good order," it is desirable. *M. v. Board of Educ. Ball–Chatham,* 429 F.Supp. 288, 291 (S.D.Ill. 1977).

Related to this claim is the contention that Defendants have intentionally failed to follow their own regulations, and Defendants "have imposed punishment which exceeds the punishment set forth in the regulations." (Complaint, ¶ 19). The Court finds the argument lacking. As Ms. Nelson testified, the regulations provide that expulsion is a potential sanction for a Class III violation. Finally, Plaintiff argues she did not violate school policy because the school regulations "are based on the commission of the criminal offense of possession of marijuana" and "[Jenny] did not commit that offense." In fact, Plaintiff contends that Defendants "have cleverly elevated the 'presence' of marijuana in the vehicle she drove to school to the 'possession' of that substance by her in the legal sense." [23] As previously discussed, it is not this Court's role in a § 1983 action to "re-interpret" school regulations. *See infra* n. 14; *McCluskey,* 458 U.S. at 970, 102 S.Ct. 3469.

## V. A THREAT OF IRREPARABLE INJURY

The last element the Court must address is whether the Plaintiff has demonstrated that irreparable harm will result absent injunction. Plaintiff contends that her irreparable injury is that she will not be able to graduate from Gulf Shores High School. Plaintiff distinguishes her situation, a graduating senior, from one in which a student is offered admittance to the Alternative School and who is then allowed to return to her original school. Plaintiff also argues that the Alternative School offers no real remedy because it is a "reform" school which does not offer a honors program and which carries a stigma affecting the processes of college admissions and job searches. Defendants argue that Hammock fails to show irreparable injury because throughout the expulsion process she was offered admission to the Alternative School. In essence, Defendants claim that Hammock has suffered no harm because she has never been denied a public education.[24]

Hammock was offered admission to the Alternative School numerous times throughout the expulsion process. While the Alternative School may not be her school of choice, there is no indication that "the right to a public education encompasses a right to choose one's particular school." *Driscoll,* 82 F.3d 383, 389 n. 5. Moreover, the absence of a honors program at the Alternative School does not change the analysis. No protected property interest is implicated in a school's failure to offer a particular curriculum. *Arundar v. DeKalb County Sch. Dist.,* 620

---

**23.** The Court finds that Plaintiff's argument comes full circle. In the complaint, Plaintiff questions the amount of discretion given to school board officials in student discipline. On the other hand, Plaintiff contends in her brief that Defendants have employed a 'smoke and mirrors' tactic [which] is the result of what has come to be called "zero tolerance." In the Court's understanding, a zero tolerance policy is one which mandates a particular punishment for an offense without taking into account a student's academic or behavioral background or the circumstances of the offense involved, i.e., school officials exercise no discretion based on the circumstances.

**24.** The Court recognizes that at some point the analysis of this factor converges with the merits of Plaintiff's claims. Defendants also contest Plaintiff's assertion that Alternative School would harm her chances of college admission and offer a newspaper article which reports that she will be attending Oglethorpe University in Atlanta this fall and that the University indicated it would still accept her with a general equivalency diploma. The Court clearly cannot accept this assertion as fact. However, what is significant is that Plaintiff has come forth with no evidence to support that she will be harmed in the college admissions process.

**1234**

F.2d 493, 494 (5th Cir.1980).[25]   Because Plaintiff has the option of attending an Alternative School which would allow her to graduate on time, she has not shown that irreparable harm will result absent preliminary injunction.  *See Turner v. South–Western City Sch. Dist.*, 82 F.Supp.2d 757, 767–68 (S.D.Ohio 1999); *see also Cooley v. Board of School Comm'r of Mobile County*, 341 F.Supp. 1375, 1379–80 (S.D.Ala.1972) (*in accord*).

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for preliminary injunction.   Lest there be any misunderstanding, the Court reiterates that it is not in a position to pass on the prudence of the decision to expel Hammock.   Even if the discipline imposed could be construed as harsh or drastic, the United States Supreme Court position on this is clear: " § 1983 was not intended to be a vehicle for federal-court corrections of errors [by school administrators] in the exercise of discretion which do not rise to the level of violations of specific constitutional guarantees."   *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

---

**25.**  In addition, Keys testified that if Plaintiff chose to attend the Alternative School her assignments and books would be transferred from Gulf Shores High School.   In addition, the February 28 letter states that, "Gulf Shores High School will provide the textbooks and materials necessary for Miss Hammock to continue her instruction at the Alternative School."   (Plaintiff's Ex. 6).   This evidence suggests that her curriculum would remain the same if she chose to attend the Alternative School.   As to the claim that Hammock will be harmed because she will not be chosen as valedictorian, this alleged injury is speculative.   To date, the valedictorian has not been chosen, and apparently, Plaintiff's grade point average is tied with that of another student.